204 N.J. Super. 228 (1985)
497 A.2d 1310
JOHN J. KENNEY AND MARY C. KENNEY, HIS WIFE, ET ALS., PLAINTIFFS,
v.
SCIENTIFIC, INC., ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
April 3, 1985.
*234 Brian D. Drazin, Thomas J. DiChiara and Dennis A. Drazin for plaintiffs (Drazin and Warshaw, attorneys; Brian D. Drazin, Thomas J. DiChiara and John R. Connolly, Jr. on the briefs).
Richard F. Engel, Deputy Attorney General, for defendant State of New Jersey (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
Thomas J. Kelly for defendant Township of Edison (Hurley & Vasios, attorneys).
Jack L. Lintner for defendant Borough of Wallington (Golden, Lintner, Rothschild, Spagnola & DiFazio, attorneys; Jack L. Lintner on the brief).
*235 Michael L. Dermody for defendant Township of Old Bridge (Greenberg, Margolis, Ziegler & Schwartz, attorneys; Jeffrey D. Light, on the brief).
Clyde A. Szuch for 101 defendant "generators" (Pitney, Hardin, Kipp & Szuch, attorneys).[1]
David J. Novack for five defendant "haulers" (Budd, Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade, attorneys; David R. Gross on the brief).[2]
JOELSON, J.S.C. (retired and temporarily assigned on recall).
The 95 plaintiffs reside in the vicinity of landfills located in the Township of Edison. One of these landfills, Kin-Buc, is privately owned and operated. Plaintiffs allege that another landfill adjoining Kin-Buc is owned and operated by the Township of Edison. Further alleging that the operation or maintenance of the landfills caused them to suffer various physical and emotional disabilities and also property damage, they have brought action against the owners and operators of the landfills as well as against approximately 625 enterprises (hereinafter "generators") which allegedly generated waste which was hauled to the Kin-Buc landfill, and against approximately 25 companies (hereinafter "haulers") which transported the waste. For reasons which will be developed hereinafter, the complaint joined as defendants the State of New Jersey through the *236 Department of Environmental Protection and Department of Transportation, and have also joined the County of Middlesex. The Township of Old Bridge and the Borough of Wallington have also been joined as generators.
The complaint, which is sprawling and general, does not appear to allege specifically that any of the generators sent waste to the landfill of the Township of Edison. As a matter of fact, in opposition to several individual generators' earlier motions for summary judgment based upon the assertion that they were erroneously joined as defendants, counsel for plaintiffs certified that the names of the generators were learned from the records of the U.S. Environmental Protection Agency and the New Jersey Department of Environmental Protection regarding the Kin-Buc landfill. However, as far as concerns the landfill of the Township of Edison, the complaint does specifically allege that the Township of Edison owned or operated its landfill near Kin-Buc, "thus further saturating the earth and causing additional percolation and/or complicating the hydrogeological conditions of the general area."
This opinion will deal with various motions for summary judgment made by (1) the State; (2) the Township of Edison; (3) the generators, including the Township of Old Bridge and the Borough of Wallington, which the court considers to be in the nature of a generator, and (4) the haulers.[3]

THE STATE OF NEW JERSEY
Tort claims against public entities are governed by the Tort Claims Act, N.J.S.A. 59:1-1 et seq. Insofar as plaintiffs seek to hold the State liable for the licensing or failure to revoke the license of a landfill or for the licensing of a hauler, they run afoul of N.J.S.A. 59:2-5 which follows:
A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend *237 or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.
The immunity which is granted by N.J.S.A. 59:2-5 "is pervasive and applies to all phases of the licensing function, whether the governmental acts be classified as discretionary or ministerial." Malloy v. State, 76 N.J. 515, 520 (1978).
The comment to N.J.S.A. 59:2-5 is significant. It states:
This immunity is necessitated by the almost unlimited exposure to which public entities would otherwise be subjected if they were liable for the numerous occasions on which they issue, deny, suspend or revoke permits and licenses. In addition, most actions of this type by a public entity can be challenged through an existing administrative or judicial review process. [Citations omitted]
Furthermore, insofar as plaintiffs seek to hold the State liable for improperly or inadequately inspecting a landfill, they are barred by N.J.S.A. 59:2-6 which follows:
A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property; provided, however, that nothing in this section shall exonerate a public entity from liability for negligence during the course of, but outside the scope of, any inspection conducted by it, nor shall this section exonerate a public entity from liability for failure to protect against a dangerous condition as provided in chapter 4 [N.J.S.A. 59:4-1 to -9]
The comment to N.J.S.A. 59:2-6 is also important. It states:
This immunity is essential in light of the potential and existing inspection activities engaged in by public entities for the benefit of the public generally. These activities are to be encouraged rather than discouraged by the imposition of civil tort liability. The inclusion of the reference to Chapter 4 [N.J.S.A. 59:4-1 et seq.] is intended to indicate that this immunity shall not apply when dangerous conditions of public property are involved. In those cases Chapter 4 of this act provides the controlling principles of liability.
Additionally, if it is plaintiffs' contention that the State failed to regulate or supervise a landfill as required by law, their claim is barred by N.J.S.A. 59:2-4 which provides:
A public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law.
Plaintiffs do not rely on any theory of strict liability against the State. Indeed, N.J.S.A. 59:9-2b specifically bars *238 any judgment against a public entity based upon strict liability. However, in the brief submitted on their behalf, plaintiffs rely on N.J.S.A. 59:4-2 which deals with the liability of a public entity "for injury caused by a condition of its property." Noting that the final paragraph in N.J.S.A. 59:4-2 provides that a public entity shall not be liable "for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable," they contend that summary judgment should be precluded in order to afford them the opportunity to prove "palpably unreasonable" conduct on the part of the public entities. The court considers plaintiffs' reliance on N.J.S.A. 59:4-2 to be misplaced because the case before the court does not deal with a condition of public property of the State of New Jersey. The Kin-Buc landfill is privately owned and operated, and the adjacent landfill is owned and operated by the Township of Edison, the liability of which will be considered hereinafter. Plaintiffs rely on N.J.S.A. 59:4-1c which defines public property as "real or personal property owned or controlled by the public entity." They argue that since the landfills were subject to extensive and pervasive regulation by the State, they were "controlled" by the State within the meaning of N.J.S.A. 59:4-1c. However, government regulation does not convert private property into public property, nor convert municipal property into State property. In Bosch v. Hain, 184 N.J. Super. 204 (Law Div. 1982), which is relied upon in plaintiffs' brief, the court did discuss the possibility that extensive regulatory control of private property might result in the property being regarded as public within the intendment of N.J.S.A. 59:4-2. However, plaintiffs overlook the fact that in Bosch, the court found it "unnecessary for the court to resolve this difficult question." Id. at 210.
However, in an earlier case, Danow v. Penn Central Transportation Co., 153 N.J. Super. 597 (Law Div. 1977), which was not referred to in Bosch, a court ruled definitively as follows:

*239 The word "controlled" in N.J.S.A. 59:4-1(c) should not be construed as extending beyond possessory control. The broad construction urged by plaintiff would enlarge governmental tort liability, without authority in decisional law or legislative history. [Id. at 603]
The logic of the Danow decision is buttressed by the fact that to extend N.J.S.A. 59:4-2 to property not in the possessory control of the State would be to expose the State to enormous liability. One has only to consider the pervasive State control in the areas of, for instance, the casino and liquor industries to realize the undesirability of adopting the theory urged upon the court by plaintiffs.
Plaintiffs' brief also relies on N.J.S.A. 59:2-3d as raising a question of fact as to whether the State acted in a manner that was "palpably unreasonable." Here again this court finds plaintiffs' reliance misplaced. Although it is true that the words "palpably unreasonable" are present in N.J.S.A. 59:2-3d, it must be remembered that N.J.S.A. 59:2-3d deals with discretionary activities as to the utilization of equipment and personnel. Therefore, that section deals with a far different function that that which is afforded immunity under N.J.S.A. 59:2-4, -5, and -6 quoted above.
The court will now turn to plaintiffs' contention in their brief that "[a] public entity can be held liable for the creation of a nuisance." In this respect, plaintiffs depend upon Birchwood Lakes Colony Club v. Medford Lakes, 90 N.J. 582 (1982). In that case, the Court was dealing with "a sewage treatment plant owned and operated by the borough." Id. at 587. As has already been pointed out, the State did not own either of the landfills here. Furthermore, the Court held in Birchwood that an action in nuisance against a public entity is "under and subject to the standards of the Tort Claims Act." Id. at 596.
According to the comment following N.J.S.A. 59:2-1, the Tort Claims Act "is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions." Thus, it has been stated that "[i]mmunity is the dominant consideration of the act." Birchwood Lakes *240 Colony Club v. Medford Lakes, supra, 90 N.J. at 596. The underlying purpose of the legislation was to "re-establish immunity for all governmental bodies within its definition of `public entity.'" Burg v. State, 147 N.J. Super. 316, 320 (App. Div. 1977); English v. Newark Housing Authority, 138 N.J. Super. 425, 428-429 (App.Div. 1976). Under the Tort Claims Act, immunity rather than liability is the general rule. Ritchie v. Cahall, 386 F. Supp. 1207 (D.N.J. 1974).
The State has also raised a procedural issue with regard to N.J.S.A. 59:8-8, which requires that a claimant file a notice of claim within 90 days of the accrual of the cause of action. The resolution of this issue would depend upon whether the so-called "discovery rule" applicable for purposes of the statute of limitations is also to be applied for the purpose of determining the timeliness of notice under N.J.S.A. 59:8-8. Since this court has already found that there can be no liability on the part of the State, it will not deal at this time with the issue of the adequacy of notice. Later in this opinion, the point will be discussed concerning the Township of Edison.
The twelfth count of the complaint charges that "the plaintiffs' use and enjoyment of their property(s) [sic] and value of same was so significantly diminished as to constitute an inverse condemnation." If it is plaintiffs' purpose here to assert that there was inverse condemnation on the part of the State, such claim is without merit. In the case now under consideration, there was no activity in the nature of a taking or an attempt to take on the part of the State of New Jersey. Some kind of action on the part of an entity cloaked with the authority to condemn is a prerequisite for invoking the doctrine of inverse condemnation. See Washington Market Enterprises v. Trenton, 68 N.J. 107 (1975); Morris County Land, etc. v. Parsippany-Troy Hills Tp., 40 N.J. 539 (1963).
Similarly, plaintiffs' claim against the State for a violation of 42 U.S.C.A. § 1983 must fail. The landfill in this case was not a State operation. Furthermore, it has been held that *241 even where the operation of a municipally owned and operated landfill resulted in the leaching of toxic wastes so as to cause physical injury and property damage to neighbors, a violation of the civil rights protections afforded by 42 U.S.C.A. § 1983 did not occur. Ayers v. Jackson Tp., 189 N.J. Super. 561 (Law Div. 1983).
In view of all the foregoing, the motion for summary judgment made by the State of New Jersey will be granted.

THE TOWNSHIP OF EDISON
Plaintiffs' case against the Township of Edison is two-pronged. The first aspect of their case is essentially similar to their action against the State of New Jersey in that it complains about the township's permitting the Kin-Buc landfill to operate, and about the manner in which the activities of Kin-Buc were monitored by the township. For the reasons already expressed in the discussion of the motion for summary judgment of the State, partial summary judgment will be granted in favor of the Township of Edison as to its permitting the Kin-Buc landfill to operate and as to the monitoring of the Kin-Buc landfill.
However, the second aspect of plaintiffs' cause of action against the township is different from their cause against the State inasmuch as the second aspect concerns the alleged ownership and operation of a landfill by the township itself. There is a regrettable lack of affidavits and certifications, but at oral argument counsel for the Township of Edison virtually conceded that a landfill adjacent to the privately owned and operated Kin-Buc landfill is owned and operated by the township. Should discovery indicate that such concession was not warranted, the township may renew its application for total summary judgment. However, this opinion will proceed on the assumption that the Township of Edison does in fact own and operate a landfill.
Even with the benefit of the assumption that a landfill adjoining the Kin-Buc landfill is owned and operated by the *242 township, plaintiffs cannot be entitled to the benefit of the doctrine of strict liability. N.J.S.A. 59:9-2b, to which reference has been made above, provides:
No judgment shall be granted against a public entity or public employee on the basis of strict liability, implied warranty or products liability.
Later in this opinion, in dealing with the subject of absolute liability regarding the generators, the court will fully consider the doctrine of absolute liability with regard to toxic wastes. In doing so, reference will be made to N.J.S.A. 13:1E-62 which has been raised by the generators in another context. Plaintiffs have not referred to that section. It provides that every owner or operator of a major hazardous waste facility shall be "strictly liable, without regard to fault" for all damages resulting from the operations of the facility. However, the court is satisfied that N.J.S.A. 13:1E-62 in its imposition of strict liability does not encompass public entities. The section is part of the Major Hazardous Waste Facilities Siting Act, N.J.S.A. 13:1E-49 et seq. The legislative finding and declarations, which are contained in N.J.S.A. 13:1E-50, conclude with the statement that "major hazardous waste facilities should be privately operated and subject to strict governmental regulation." Furthermore, in N.J.S.A. 13:1E-51, a hazardous waste facility is defined as "any commercial hazardous waste facility which has a total capacity to treat, store or dispose of more than 250,000 gallons of hazardous waste, or the equivalent thereof." The record does not disclose the capacity of the Edison landfill, but the court does not consider that landfill to be a commercial facility despite the ensuing statement in the definition that a commercial hazardous waste facility means any hazardous waste facility "which accepts hazardous waste from more than one generator." The prime consideration there appears to be to exempt a private facility which does not accept waste from more than one generator, rather than to include public entities. The section of the Tort Claims Act, N.J.S.A. 59:9-2b, which firmly precludes a judgment for strict liability, remains in the statutes. Repeal by implication is a disfavored *243 doctrine. Brewer v. Porch, 53 N.J. 167, 173 (1969); Loboda v. Clark Tp., 40 N.J. 424, 435 (1963); Swede v. City of Clifton, 22 N.J. 303, 317 (1956).
This does not mean, however, that the Township of Edison may not be liable under N.J.S.A. 59:4-2, which provides:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
The complaint avers that the maintenance of the Edison landfill was a contributing factor to plaintiffs' injuries and damage. In a motion for summary judgment, "[a]ll inferences of doubt are drawn against the movant in favor of the opponent of the motion." Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). According to N.J.S.A. 59:4-2, a public entity will not be liable for an injury caused by a condition of its property, "if the action the entity took to protect against the conditions or the failure to take such action was not palpably unreasonable." Concerning the issue of whether action taken or the failure to take action was "palpably unreasonable," the holding in Brown v. Brown, 86 N.J. 565, 580 (1981) was that such question requires a determination by a jury. When there is a genuine issue of fact, summary judgment is inappropriate. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 74. Additionally, summary judgment would not be warranted because the parties here have not yet had the opportunity for pretrial discovery. Empire Mutual Insurance Co. v. Melburg, 67 N.J. 139, 142 (1975). As for *244 plaintiffs' claim against the Township of Edison for nuisance, this opinion has already pointed out that an action in nuisance against a public entity is subject to the standards of the Tort Claims Act. Birchwood Lakes Colony Club v. Medford Lakes, supra, 90 N.J. at 596.
The court will now treat the subject of whether plaintiffs complied with the 90-day notice provision required by N.J.S.A. 59:8-8. Under that provision, it is essential that a claim relating to the cause of action shall be presented "not later than the ninetieth day after accrual of the cause of action." The resolution of this issue must depend upon whether the court should apply the so-called "discovery rule" which, for the purposes of the statute of limitations, fixes the date of accrual of the cause of action as the time when a plaintiff knows or reasonably should have known of the facts forming the basis for his or her cause of action. See Lopez v. Swyer, 62 N.J. 267 (1973); Fernandi v. Strully, 35 N.J. 434 (1961).
In Torres v. Jersey City Medical Center, 140 N.J. Super. 323 (Law Div. 1976), an opinion containing discussion of the history of the Tort Claims Act, the holding was that the discovery rule should apply with regard to the notice requirement of N.J.S.A. 59:8-8. In Bell v. County of Camden, 147 N.J. Super. 139, 143 (App.Div. 1977), the court briefly stated that the discovery rule set forth in Lopez v. Swyer, supra, is inapplicable to the notice provisions of the Tort Claims Act. However, that statement clearly must be regarded as dictum because it was followed by the observation that "[f]actually there is no basis upon which to apply the discovery rule to the plaintiff's case." Ibid. However, in Fuller v. Rutgers, The State University, 154 N.J. Super. 420, 424 (App.Div. 1977), certif. den. 75 N.J. 610 (1978), the implication was that under the appropriate factual pattern, the discovery rule would apply.
N.J.S.A. 59:8-1 which deals with the date of accrual of cause of action is followed by a comment that states:

*245 The purpose of this section is to make clear that the notice provisions of this chapter do not affect the statute of limitations provision established herein. It is intended that the term accrual of cause of action shall be defined in accordance with existing law in the private sector.
If plaintiffs were to be denied the benefit of the discovery rule with regard to the notice provisions of the Tort Claims Act, such denial would thereby deprive them of the benefits of that very same rule which should be available to them for statute of limitations purposes. Thus, the availability of the discovery rule as to the statute of limitations would be illusory as no case could even be started if the 90-day notice provision were held to be a bar to action. Considerations of fairness and equity would, therefore, appear to mandate the utilization of the discovery rule as to the filing of a notice of claim. On the basis of the record presently available, this court is unable to determine the rights of plaintiffs under the discovery rule because it lacks information bearing on the question of when plaintiffs knew or reasonably should have known of the facts forming the basis of their causes of action. Although summary judgment on the procedural ground is hereby denied to the Township of Edison because of the unresolved underlying factual issue, this denial is without prejudice to the renewal of the motion upon the completion of pretrial discovery, which may commence immediately. If the motion should be granted, the procedures relating to the infants' claims will be addressed, but such claims will definitely survive under the authority of N.J.S.A. 59:8-8.
Except as to plaintiffs' claims based on strict liability, the motion for summary judgment of the Township of Edison on the aspect of the case against it based on the ownership and operation of its landfill will be denied.

THE GENERATORS EXCEPT THE BOROUGH OF WALLINGTON AND THE TOWNSHIP OF OLD BRIDGE
Plaintiffs' complaint is diffuse, and does not contain a separate count against each category of defendants. However, plaintiffs' theories of liability against the generators appear to *246 include strict or absolute liability, negligence, nuisance, trespass, breach of warranty, battery and fraud. Dealing first with plaintiffs' assertion of strict liability, the court is of the opinion that the generators' motions for summary judgment regarding plaintiffs' claim of strict liability must be denied. The generators stress the fact that no substances escaped or leached from their properties, but rather from the landfill to which the substances had been transported. They rely on the well-established rule of law that one who engages the services of an independent contractor is not liable for the negligent acts or omissions of the contractor. Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 430-431 (1959); Terranella v. Union Bldg. & Construction Co., 3 N.J. 443, 446-447 (1950). However, in Majestic Realty Associates, Inc. v. Toti Contracting Co. the Court held that where the work to be done is "ultra-hazardous," there is absolute liability on the part of the person or company engaging the services of the independent contractor, regardless of fault. The Court further held that where the work to be done is "inherently dangerous," the one who engages the independent contractor can be vicariously liable for the independent contractor's negligence. 30 N.J. at 436.
In State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473 (1983), the Court retained the doctrine of absolute liability, although substituting the description "abnormally dangerous" for "ultra-hazardous." Id. at 491.[4] In that case, the Court stated:
We believe it is time to recognize expressly that the law of liability has evolved so that a landowner is strictly liable to others for harm caused by toxic wastes that are stored on his property and flow onto the property of others. [Id. at 488]
The general concept was not new. As the Court noted, as long ago as 1866 and as far away as England, the Exchequer *247 Chambers stated as follows in Rylands v. Fletcher, L.R. 1 Ex. 265 (1866), aff'd L.R. 3 H.L. 330 (1868):
We think that the true rule of law is that the person who for his own purposes brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it at his peril, and if he does not do so, is prima facie answerable for all damage which is the natural consequence of its escape. [1 Ex. at 279-280]
In fixing absolute liability, the Court in Ventron expressed dissatisfaction with the "inherently dangerous" test which sparks vicarious liability for negligence. In so doing, it referred to the "difficulty of determining whether an activity is `ultra-hazardous' or `inherently dangerous.'" 94 N.J. at 491. The Court then added the following language.
... we conclude that mercury [the substance involved in Ventron] and other toxic wastes are "abnormally dangerous," and the disposal of them, past and present, is an abnormally dangerous activity. We recognize that one engaged in the disposing of toxic waste may be performing an activity that is of some use to society. Nonetheless, "the unavoidable risk of harm that is inherent in it requires that it be carried on at his peril, rather than at the expense of the innocent person who suffers harm as a result of it." Restatement (Second), supra, comment h at 39. [94 N.J. at 493]
The language quoted above is significant in several respects, not the least of which is that it characterizes the "disposal" of toxic wastes as abnormally dangerous. At oral argument, counsel for the generators contended that that language is dictum. Whether dictum or not, it is such a strong statement of underlying social policy by the State's highest court that a trial judge should not arrogate unto himself the right to disregard it.
This court is well aware of the fact that, unlike the situation in Ventron, supra, Majestic Realty Associates, supra, and Rylands v. Fletcher, supra, plaintiffs here were not neighbors of the generators, and that the waste did not directly escape from the property of the generators. At oral argument, counsel for the generators also stressed the point that in Ventron and in Rylands v. Fletcher, supra, the courts dealt only with the liability of a landowner for damage to nearby property. In his argument in this respect, counsel urged the court to consider *248 Section 520 of the Restatement of Torts. That section was quoted verbatim in Ventron prior to the Supreme Court's conclusion that toxic wastes are abnormally dangerous and their disposal an abnormally dangerous activity. However, because of counsel's emphasis, the court has read the comments contained in the Restatement, including comment e to Section 520, which follows:
e. Not limited to the defendant's land. In most of the cases to which the rule of strict liability is applicable the abnormally dangerous activity is conducted on land in the possession of the defendant. This, again, is not necessary to the existence of such an activity. It may be carried on in a public highway or other public place or upon the land of another. [Restatement, Torts 2d, § 520 at 37 (1977)]
Since the potential for calamity lurking in an abnormally dangerous substance is precisely what justifies the imposition of absolute liability, the place where the substance ultimately does its marauding should not serve to dissipate such liability. A company which creates the Frankenstein monster of abnormally dangerous waste should not expect to be relieved of accountability for the depredations of its creature merely because the company entrusts the monster's care to another, even an independent contractor.
Furthermore, an important argument in support of strict or absolute liability is that despite the economic hardship involved, the creators of abnormally dangerous substances are far better able than the victims to sustain the costs of the injuries resulting from those substances. See Beshada v. Johns-Manville Products Corp., 90 N.J. 191, 205 (1982). As quoted in Beshada, ibid., "[i]t should be a cost of doing business that in the course of doing that business an unreasonable risk was created." Keeton, "Products Liability  Inadequacy of Information," 48 Tex.L.Rev. 398, 408 (1970).
As already indicated above, the Ventron Court, in opting for the application of strict liability in the toxic waste case before it, had no need to apply the "inherently dangerous" doctrine which imposes vicarious liability for the negligence of an independent contractor. However, the Court did not abolish the *249 doctrine with regard to cases dealing with hazardous activities other than those dealing with toxic wastes. Regarding such activities, the doctrine apparently remains alive. If Ventron had not been decided, plaintiffs in the case now before the court would undoubtedly have had the benefit of the old doctrine, reaffirmed in Majestic Realty Associates, Inc. v. Toti Contracting Co., supra, that one who engages the services of an independent contractor for an "inherently dangerous" operation is liable for the negligence of the independent contractor. Thus, before Ventron, plaintiffs would at the very least have been entitled to proceed on the theory of vicarious liability for negligence of the independent contractor regarding "inherently dangerous" substances even if they had been unable to establish that the substances in question were "abnormally dangerous."
If the court in the instant case were to accept the generators' argument that the absolute liability fixed in Ventron applies only to neighbors of the generators who suffer by reason of substances escaping directly from the property of the generators, the court would then feel impelled to invoke the theory of vicarious liability for negligence of an independent contractor related to inherently dangerous operations. It would be a travesty to interpret Ventron, which obviously was designed to enlarge the protection of victims of toxic waste, in such a way as to abridge that protection.
In Ventron, the Court was dealing with one substance, mercury, which had admittedly been generated. In the case now before this court, the situation is not so clear-cut. Many of the hundreds of defendants deny that they generated or dispatched any toxic waste at all. Thus, a question of fact must be resolved by the trier of fact after full pretrial discovery has been completed. Furthermore, plaintiffs have alleged that some of the substances which were dispatched by some of the defendants became hazardous in combination with other substances. In Ventron, the Court noted that "the waste dumped may react synergistically with elements in the environment, or *250 other waste elements, to form an even more toxic compound." 94 N.J. at 492. This also implicates a question of fact under the circumstances of the case now under consideration. Because of the extraordinarily sprawling and complex nature of this case, it would be desirable that there be an initial trial on the limited issue of the type and nature of the substances generated by each defendant, such initial trial to be followed by separate trials on such other issues as may be designated closer to the time for trial.
The generators further contend that they are relieved of responsibility because the landfill was licensed and regulated by government agencies. The court does not accept this contention. The landfill was subject to governmental regulation precisely because it was so perilous. The regulation was designed to protect area residents in such a way as to prevent those injuries which would, incidentally, subject generators to the burden of absolute liability. However, the generators should not be permitted to escape the consequence of absolute liability by virtue of the fact that governmental regulation may have been unavailing in the case of this landfill. To limit Ventron so as to bar absolute liability because the landfill was approved by a governmental agency would be to weaken the protection the Court wished to afford to victims of toxic waste. As to governmental approval in products liability cases, see Feldman v. Lederle Laboratories, 97 N.J. 429, 446 (1984); Torsiello v. Whitehall Laboratories, 165 N.J. Super. 311, 326, n. 4 (App.Div. 1979), certif. den. 81 N.J. 50 (1979); Ferrigno v. Eli Lilly And Co., 175 N.J. Super. 551, 579 (Law Div. 1980).
Additional comment is in order concerning the court's statement in the preceding paragraph that "government regulation may have been unavailing." The brief submitted on behalf of plaintiffs states that when it appeared that the New Jersey Department of Environmental Protection might close Kin-Buc, "[c]orporations and businesses, both large and small, lobbied the Department of Environmental Protection, urging it to grant *251 an expansion of Kin-Buc and to refrain from closing its gates." Not only is there no corroboration in the record of this allegation, but there is no identification of the "corporations and businesses" to which the brief refers. With regard to an earlier motion made by a generator, Durling Farms, plaintiffs' counsel stated in a letter to the court that there was "an organized lobbying effort by the Chamber of Commerce to prevent the State from closing the KINBUC facility." In opposition to the motion of Durling Farms, counsel for plaintiffs attached a certification containing a letter dated May 19, 1976 from the technical director of Scientific, Inc. (an owner and operator of Kin-Buc) to Joseph Ludlum of the New Jersey Chamber of Commerce in response "to your telephone request that we review our chemical waste disposal operation at Kin-Buc." This letter contains arguments as to why it would be detrimental to industry for Kin-Buc's operation to be terminated. It advances reasons why the closing of Kin-Buc and the consequent need for alternative methods of disposal would be of economic disadvantage to industry because of greater costs that would be entailed. The letter from Scientific, Inc. also contained a list of the many corporations which used Kin-Buc's facilities.
Attached to counsel's certification regarding Durling Farms was also a letter dated May 21, 1976 from Ludlum as Director, Employers' Advisory Department of the New Jersey Chamber of Commerce, to the Director of the Solid Waste Administration of the Department of Environmental Protection. This letter was stated to be "in response to your request to both the State Chamber and the New Jersey Manufacturers' Association for information on the Kin-Buc chemical waste disposal operation in Edison." Director Ludlum's letter enclosed the letter to him of May 19, 1976 from Scientific, Inc., stating that the letter from Scientific was submitted "on behalf of both statewide organizations." It is apparently plaintiffs' contention that the generators are estopped from asserting a defense of reliance on governmental approval of the Kin-Buc facility because of concerted *252 efforts made by industry to dissuade the Department of Environmental Protection from closing Kin-Buc. However, the court is in no position to discuss the availability of a claim of estoppel because there is no proof that either the Chamber of Commerce or the New Jersey Manufacturers' Association took any steps directed at keeping Kin-Buc open at the behest of any of defendants.
The generators also have called the court's attention to N.J.S.A. 13:1E-62, which is a section of the Major Hazardous Waste Facilities Siting Act. It provides:
a. Every owner or operator of a major hazardous waste facility shall be jointly and severally strictly liable, without regard to fault, for:
(1) All direct and indirect damages, no matter by whom sustained, proximately resulting from the operations or closure of the facility, including any personal injuries or medical expenses incurred as a result thereof....
The court does not agree with the contention of the generators that this statutory imposition of absolute liability on a facility established for the storage or disposal of hazardous waste is an indication on the part of the Legislature of an intention to preclude absolute liability on the part of generators who contribute waste to the facility. By its very title, N.J.S.A. 13:1E-49 et seq. deals with the "siting" of such facilities. The legislative findings and declarations contained in N.J.S.A. 13:1E-50 make this clear. Because of the absolute liability imposed on the landfill by N.J.S.A. 13:1E-62, plaintiffs are afforded a powerful remedy against the landfill owners and operators. However, realistically recognizing that circumstances may arise whereby the owners and operators of a landfill may be unable to satisfy judgments which may ensue against them, this court will not read N.J.S.A. 13:1E-62 as a legislative endeavor to interfere with the development of the common law protection of the rights of the public against generators of abnormally dangerous waste. Similarly, the fact that a section of the spill act, N.J.S.A. 58:10-23.11g(c), makes a person who "is in any way responsible for any hazardous substance" chargeable with strict liability for all cleanup and removal costs *253 does not serve to wipe away the strict liability for injuries and damages enunciated in Ventron, supra.
Before leaving the subject of absolute liability, the court notes that undoubtedly the generators will file crossclaims against the owners and operators of the Kin-Buc landfill. However, the fact that "fault, and hence ultimate responsibility, may lie elsewhere" does not insulate the generators from absolute liability. Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 72 (1960).
Of course, nothing contained in this opinion is to be construed as a finding of fact that any toxic waste which may be found to have been generated was the proximate cause of any injury or damage plaintiffs may have suffered. The determination of that question must also await pretrial discovery and proof before the trier of fact.
Although this court has concluded that there is absolute liability on the part of the generators concerning disposal of toxic waste, it will, nevertheless, deal with plaintiffs' further assertions of negligence on the part of the generators. The court believes it should consider negligence because plaintiffs seek punitive damages which "are not to be applied in the ordinary unaggravated tort case whether it be grounded on strict liability or fault." Berg v. Reaction Motors Div., 37 N.J. 396, 413 (1962). In order to obtain punitive damages, a plaintiff must show "that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." Id. at 414. Although the test for imposition of punitive damages is severe, such damages may be awarded against a defendant who displays "such a conscious and deliberate disregard of the rights of others that his conduct may be called willful or wanton." Prosser & Keeton, Torts (5 ed. 1984), § 2 at 9-10.
It is a settled rule of law that one may be liable for his negligent choice of an independent contractor. Majestic Realty Associates, Inc. v. Toti Contracting Co., supra, 30 N.J. *254 at 431. In this respect, plaintiffs contend in their complaint there are several reasons establishing that, in the interest of safety, the generators should have used a different landfill. The complaint also alleges that by reason of occurrences at the landfill, defendants "learned that the landfill was unfit and the disposal activities were negligently and improperly conducted so as to cause the damages and contamination as alleged herein." Although the generators may show governmental approval of the landfill as a factor in their favor, such approval alone does not preclude an award of punitive damages if the standards for such damages can be satisfied. The generators' contention that they relied on governmental approval of the landfill appears to cast serious doubt on the availability of punitive damages. However, until all the facts have been developed, such damages cannot be considered to be entirely out of the question. Additionally, the complaint alleges improper production and handling of the waste by the generators. The court, therefore, concludes that there have been sufficient factual questions raised to preclude summary judgment on plaintiffs' claim for punitive damages. When "a potential factual issue" exists, summary judgment is premature because a litigant should be "afforded the opportunity, through discovery proceedings, to develop the facts on which she intended to base the asserted claim." Empire Mutual Insurance Co. v. Melburg, supra, 67 N.J. at 142.
Related to plaintiffs' claim for negligence is their allegation that the generators should be held liable because they violated federal and State laws. Whether this allegation seeks to establish strict liability or negligence per se, it must fail. Plaintiffs have failed to spell out clearly exactly what federal or State laws the generators have violated. At any rate, the law is that "the violation of a statutory duty of care is not conclusive on the issue of negligence in a civil action but it is a circumstance which the trier of fact should consider in assessing liability." Braitman v. Overlook Terrace Corp., 68 N.J. 368, 385 (1975); Carlo v. The Okonite-Callender Cable *255 Co., 3 N.J. 253, 264-265 (1949). Furthermore, plaintiffs are unable to cite any legislation which imposes statutory liability on generators of hazardous waste under the circumstances of this case. The provisions of the Hazardous Waste Facilities Siting Act, N.J.S.A. 13:1E-49 et seq., and the spill act, N.J.S.A. 58:10-23.11 et seq., to which reference has been made hereinabove, do not establish such statutory liability. The motions of the generators for summary judgment as to plaintiffs' claims for strict liability or negligence per se by reason of violations of statutes will be granted.
Next, the court will turn to that aspect of the complaint alleging nuisance on the part of the generators. The doctrine of nuisance per se which had at one time attached to hazardous activities has been abandoned in New Jersey. State, Dept. of Environ. Protec. v. Ventron Corp., supra, 94 N.J. at 490-491; Majestic Realty Associates v. Toti Contracting Co., supra, 30 N.J. at 434-435. There is nothing in this case which indicates the presence of a factual issue as to any other type of nuisance having been perpetrated by the generators. The locus of any nuisance which may have existed was at the landfill, and any such nuisance was the result of the actions of the landfill's owners and operators.
Furthermore, plaintiffs do not need a remedy grounded upon nuisance. It has already been stated in this opinion that if the generators dispatched toxic wastes, they are subject to strict liability, and that they may also be liable for punitive damages for negligent choice of the independent contractor, as well as their own alleged negligent production and handling of the waste. There is no need for plaintiffs to seek a grab bag of duplicitous causes of action. "We are here primarily concerned with the underlying considerations of reasonableness, fairness and morality rather than with the formulary labels to be attached to the plaintiffs' causes of action or the legalistic classifications in which they are to be placed." Berg v. Reaction Motors Div., supra, 37 N.J. at 405. Summary judgment *256 on the claims of nuisance against the generators will be granted.
The remainder of the potpourri of causes of action urged by plaintiffs against the generators can be disposed of briefly. With regard to causes of action based upon trespass and battery, the court will not be sidetracked into a dissertation upon these ancient remedies. The days of straitjacket pleadings are fortunately behind us. There is no need for us to be obsessed with labels, and to endeavor to torture old remedies to fit factual patterns not contemplated when those remedies were fashioned. A new body of law is developing and will undoubtedly continue to evolve in the troublesome field of law relating to hazardous waste. This opinion has already indicated that there are remedies available to plaintiffs if they can sustain their burdens of proof as to absolute liability or as to punitive damages. Accordingly, the generators' motions for summary judgment as to trespass and battery will be granted.
Regarding plaintiffs' claims based upon breach of warranty, the briefs submitted on behalf of plaintiffs as well as the generators rely on precedents in the area of products liability. However, although there is a kinship between the subjects of hazardous waste and products liability, they are not the same. The court is not here dealing with a products liability case, but with a hazardous wastes case, an area in which a body of separate law is developing in order to address the changing problems of changing times. Concepts of implied or express warranty are inapplicable to this case. The generators' motions for summary judgment as to breach of warranty will be granted. As for the allegation of fraud, the motion for summary judgment will be granted because plaintiffs have failed to comply with R. 4:5-8(a).

THE GENERATORS, BOROUGH OF WALLINGTON AND TOWNSHIP OF OLD BRIDGE
The Borough of Wallington is a public entity. Earlier in this opinion, the borough was characterized as being "in the nature *257 of a generator." That characterization was based upon the affidavit of the borough coordinator of Wallington in support of the municipality's motion for summary judgment. That affidavit states that the borough contracted for work involving the connection of a septic tank located at a firehouse to the borough's sewer system. The affidavit then reveals that "[i]n order to complete the connection the septic tank had to be pumped out, and the borough contacted Gaess Environmental Services Co. upon recommendations of one of its contractors to perform the work." It then goes on to aver that the borough did not instruct Gaess Environmental Services Co. to dispose of the pumped-out material at the Kin-Buc landfill, nor did that company ever inform the borough that it intended to transport the waste to that landfill.
As far as strict or absolute liability on the part of the Borough of Wallington is concerned, as already mentioned above, N.J.S.A. 59:9-2b flatly mandates that "[n]o judgment shall be granted against a public entity or public employee on the basis of strict liability." Therefore, even if the material emanating from Wallington might be considered as having been abnormally dangerous, strict liability on the part of the borough would be barred. Plaintiffs may perhaps contend that inasmuch as they are denied the benefit of absolute liability regarding an abnormally dangerous substance, they should be allowed to revert to the holding in Majestic Realty Associates, Inc. v. Toti Contracting Co., supra, that the generators are subject to vicarious liability for the negligence of the independent contractor regarding an "inherently dangerous" substance. However, they would face the obstacle of the Tort Claims Act in this respect also. The legislative declaration at the outset of the Tort Claims Act proclaims that "it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act." N.J.S.A. 59:1-2; emphasis supplied. Although N.J.S.A. 59:2-2 makes a public entity responsible for injury "caused by an act or omission of a public employee within the scope of *258 his employment," nothing in the Tort Claims Act imposes liability on a public entity for negligence on the part of an independent contractor. With regard to the claims against the State of New Jersey, this opinion has already discussed the intention of the Tort Claims Act to insure that any immunity provision in the act or any immunity provided by common law will prevail. "It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities." Comment N.J.S.A. 59:2-1.
There is an additional aspect of the case against the Borough of Wallington which involves the rule of law that one can be held liable for negligently engaging the services of an incompetent independent contractor who does damage. Plaintiffs have invoked this doctrine. In this regard, consideration must be given to N.J.S.A. 59:2-3a which provides that "[a] public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." Reading the affidavit of the borough coordinator of Wallington, it is not possible for the court to discern what officer or employee of the Borough of Wallington decided to engage Gaess Environmental Services Co., or under what circumstances that decision was made. It is essential to have this information because ministerial decisions or decisions of low-level personnel are not considered discretionary activities within the meaning of N.J.S.A. 59:2-3. See Wuethrich v. Delia, 134 N.J. Super. 400 (Law Div. 1975), aff'd 155 N.J. Super. 324 (App.Div. 1978). "[T]he discretionary function immunity should be limited to actual policymaking." Costa v. Josey, 83 N.J. 49, 60 (1980).
In view of the factual question involved, it would be premature to resort to the remedy of summary judgment before there has been pretrial discovery. Empire Mutual Insurance Co. v. Melburg, supra. Furthermore, as explained in the court's consideration of plaintiffs' claims against the Township of Edison, pretrial discovery is also needed in order to resolve the issue of whether the 90-day notice requirement of N.J.S.A. *259 59:8-8 has been satisfied. To the extent that the motion of the Borough of Wallington applies to absolute liability, it will be granted. In all other respects, it will be denied. In the event a motion for summary judgment should in the future be granted in favor of Wallington for plaintiffs' failure to give timely notice, procedures as to the infant plaintiffs will then be discussed.
With regard to the Township of Old Bridge, everything stated above concerning the Borough of Wallington as to the immunity of a public entity applies. However, there is a further question concerning the 90-day notice of claim requirement of N.J.S.A. 59:8-8. Counsel for Old Bridge has not supplied an affidavit or certification, but his brief states that the Township of Old Bridge (formerly the Township of Madison) is in Middlesex County, and that no notice of claim has been filed against Old Bridge or its predecessor. The brief further states that there is another Township of Madison located in Morris County, suggesting that the notice of claim may have mistakenly been filed there.
At the request of the court, plaintiffs' counsel supplied his certification on this issue. It is not entirely clear, but seems to concede that the notice had been filed with the wrong Township of Madison, namely the one in Morris County. However, the certification of plaintiffs' attorney raises questions as to whether the doctrines of estoppel or waiver are available to plaintiffs in this matter. For instance, plaintiffs' counsel refers to discussions and correspondence between himself and the then Township Attorney for Old Bridge after the filing of the summons and complaint against that township. He also states that the answer filed on behalf of Old Bridge did not include failure to give timely notice under N.J.S.A. 59:8-8 as an affirmative defense.[5]See Hill v. Middletown Bd. of Ed., 183 N.J. Super. *260 36 (App.Div. 1982), certif. den. 91 N.J. 233 (1982); Anske v. Borough of Palisades Park, 139 N.J. Super. 342 (App.Div. 1976). Being of the opinion that discovery is required before the court can determine whether waiver and estoppel are present in this case, the motion for summary judgment regarding alleged noncompliance with N.J.S.A. 59:8-8 will be denied.

THE HAULERS
The complaint is based upon the same general theories against the haulers as it is against the generators. This opinion has already stated that strict or absolute liability would pertain against those generators proven to have produced toxic waste. However, the question has been raised as to whether the same strict or absolute liability should attach in the context of this case to haulers who transported the offending substances of toxic waste produced by the generators. In resolving this question, the court perceives a significant difference between a company which brings abnormally hazardous waste into the world and one which as a conduit transports that waste without untoward incident.
This is not a holding that a company which elects to go into the business of transporting abnormally dangerous waste is free from the imposition of absolute liability if the waste escapes and causes injury while in the possession and control of the hauler. That issue is not implicated under the facts of this case. In the case now under the court's consideration, the waste was long out of the haulers' possession when it did its alleged damage. While it is true that the same may be said as to the generators, emphasis must be placed on the difference between one who is the creator of hazardous waste and one who merely carries it away to its destination. It is the opinion *261 of the court that the liability of the creator should be absolute from the moment the abnormally dangerous waste is spawned until it wreaks its damage, but that if there is absolute liability upon a hauler of abnormally dangerous waste, the liability of such hauler should be absolute only for the period it possesses and controls the material. Such a limitation would preclude the adoption of a "but for" theory based on the contention that but for the hauling, the material would not have been at the landfill in the first place.[6]
Here again, resort to the comments to the Restatement of Torts can be helpful. Section 519 provides:
(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous. [Restatement, Torts 2d, § 519 at 34 (1977)]
Comment e to Subsection (2) of Section 519 states:
... [T]ransportation of dynamite or other high explosives by truck through the streets of a city is abnormally dangerous for the same reason as that which makes the storage of the explosives abnormally dangerous. If the dynamite explodes in the course of the transportation, a private person transporting it is subject to liability under the rule stated in Subsection (1), although he has exercised the utmost care.
It is significant that this comment refers to an event which occurs "in the course of the transportation." If it had been the intention that strict liability would extend to an accident which occurs after the transportation has been safely terminated, the author of the comment would undoubtedly have so declared.
For reasons already stated, the court rejects plaintiffs' contention that the violations of federal and State statutes (unspecified) establish negligence per se. Likewise, the court rejects plaintiffs' claim based on breach of warranty, a doctrine *262 which is out of place in a hazardous wastes case. As for nuisance, there are no facts in this case to indicate that any nuisances that may have been created can be chargeable to truckers who merely transported waste to the landfill. Concerning fraud, plaintiffs have failed to comply with R. 4:5-8(a). The haulers' motions for summary judgment on the issue mentioned in this paragraph will be granted.
There does remain, however, the question of whether some of the haulers were negligent in the choice of the landfill or, if they did not actually choose the landfill, were negligent in making deliveries to a landfill which they knew or should reasonably have known to be dangerous. The facts in each instance have not been fully developed, but it appears that some generators left the choice of the landfill entirely to the hauler, whereas other generators chose the landfill themselves. A hauler who selects a landfill which he knows or reasonably has reason to know to be hazardous should be held accountable in negligence. Similarly, if a hauler who does not himself select the landfill knows or reasonably has reason to know that the site selected by the generator is dangerous or has become dangerous, his making deliveries under such circumstances may be considered to be negligence. As in the case of the generators, although the haulers may show governmental approval as a factor in determining negligent choice of a landfill, such approval will not in itself determine the issue. This implicates a question of fact which precludes summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, supra. Similarly, insofar as the complaint may allege negligence on the part of the haulers in the manner in which they made deliveries at the landfill site, questions of fact that preclude summary judgment also are involved. Since the facts in the claims against the haulers remain to be developed regarding negligent choice of landfill, the negligent making of deliveries to a landfill which the haulers knew or reasonably should have known to be hazardous, or negligence in the manner of delivery, summary judgment would be premature as discovery in this case has not *263 yet even been commenced. See Empire Mutual Insurance Co. v. Melburg, supra.
The motions of the haulers for summary judgment will be granted except for plaintiffs' claims based upon negligent choice of landfill by the haulers, upon their making deliveries at a time they knew or reasonably had reason to know of dangerous conditions at the landfill, and upon alleged negligence in the manner of delivery. The motions related to such claims will be denied.

RECAPITULATION
Summary judgment will be granted in full in favor of the State of New Jersey.
Summary judgment will be granted in favor of the Township of Edison on allegations that it negligently permitted the Kin-Buc landfill to operate, or negligently inspected the Kin-Buc operations. As for the action against the Township of Edison based on the operation of its own landfill, although partial summary judgment will be granted regarding strict liability as above set forth, the cause of action based upon claims permissible under N.J.S.A. 59:4-2 will remain pending discovery. The township's motion for summary judgment based upon plaintiffs' alleged failure to give timely notice under N.J.S.A. 59:8-8 will also be denied pending discovery.
Partial summary judgment will be granted the non-public entity generators as above set forth. However, plaintiffs' causes of action based upon absolute liability for toxic wastes will remain. With regard to plaintiffs' claims for punitive damages, their actions for negligent choice of independent contractor, and negligent production and handling of toxic waste will also remain.
Partial summary judgment will be granted in favor of the public entity generator, Borough of Wallington, as to absolute or vicarious liability as above set forth, but the motion for summary judgment based upon negligent choice of an independent *264 contractor will be denied pending discovery. Similarly, the Borough of Wallington's motion for summary judgment based upon plaintiffs' alleged failure to give timely notice under N.J.S.A. 59:8-8 will be denied pending discovery.
Partial summary judgment will be granted in favor of the haulers as above set forth, but plaintiffs' causes of action for negligent choice of the landfill, making deliveries to a landfill which the haulers knew or had reason to know to be dangerous, and negligent manner of delivery will remain both as to compensatory and punitive damages.
There have been no motions for summary judgment by the private owners and operators of the landfill, and the cases against them remain in their entirety.
The moving parties shall submit orders consistent with this opinion under the five-day rule. Should there be objection as to any order submitted, the court will fix a date for hearing as to the settlement of the form of order.
NOTES
[1] There are approximately 625 defendant generators, 101 of whom are represented by Pitney, Hardin, Kipp & Szuch. Most of the generators not represented by Pitney, Hardin, Kipp & Szuch joined in the brief submitted by that firm. However, supplemental briefs were received by Wilentz, Goldman & Spitzer on behalf of four defendant generators, and from Riker, Danzig, Scherer & Hyland on behalf of eighteen defendant generators. Additionally, the court received a supplemental reply brief from Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor on behalf of 20 defendant generators, and heard argument from Gregory B. Reilly of that firm regarding the points raised in the reply brief.
[2] Most of the other 20 defendant haulers joined in the brief submitted by Budd, Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade.
[3] The County of Middlesex has not yet moved for summary judgment.
[4] In Ventron, the appeal concerned the responsibility of various corporations for the cost and cleanup of mercury pollution under the Spill Compensation and Control Act, N.J.S.A. 58:10-28.11 et seq.
[5] Old Bridge contends that the defense of failure to give timely notice was raised in the following fourth separate defense: "This defendant adopts by reference all of the separate defenses filed by other parties to this action as if same were set forth at length herein." This contention lacks merit. See R. 4:5-4.
[6] The court has been advised that there is pending in the U.S. District Court a case, in which an issue is whether SCA Services, Inc.; SCA Services Passaic, and Earthline Company were haulers or were operators of the landfill. It is not the purpose of this opinion to resolve that issue.