RAFFAELE SARNO, RESPONDENT, v. GULF REFINING COMPANY, APPELLANT.

Submitted December 6, 1923—Decided April 10, 1924.

1. Where one undertakes to do a work which, in the ordinary mode of doing it is a nuisance, he is liable for any injuries which may result from it to third persons, though the work is done by a contractor exercising an independent employment, and employing his own servants; but when the work is not in itself a nuisance, and the injury results from the negligence of such contractor or his servants, the contractor alone is liable, unless the owner is in default in employing an unskillful or improper person as contractor.

2. There is nothing inherently dangerous in the ordinary use, removal or carriage of gasoline, and the danger from it arises, not from its use in ordinary transportation, but from its negligent use or misuse in a dangerous environment; therefore, the removal of a tank containing gasoline from under the sidewalk of a public street is not, *per se*, a nuisance.

---

On appeal from the Hudson County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the respondent, *Gross & Gross.*

For the appellant, *Mark Townsend, Jr. (W. J. Gutherie,* of Pennsylvania).

The opinion of the court was delivered by

MINTURN, J. While Michael Sarno, the infant son of the plaintiff, was returning to his home from the performance of a domestic errand, and while in the act of crossing the

intersection at the corner of Brunswick and First streets, in Jersey City, he incidentally stepped upon a manhole cover, when an explosion took place beneath him, which raised the cover of the manhole some distance into the air, and drew the boy into the burning manhole, from which he was extricated after suffering severe injuries as the result of the occurrence. To recover for these injuries thus sustained the father brought suit as next friend for the boy, and also as parent for the loss of service and incidentals for the medical expenses.

At the Circuit a severance of the two causes of action was ordered, and the suit of the father was tried alone, with the result that the jury found a verdict in favor of the father for $1,000, from which judgment this appeal was taken.

A number of alleged procedural errors are presented by the record, but we deem it necessary only to determine the fundamental issue involved as presented by the testimony in the case. The correct exposition of the legal question involved necessitates a narration of the facts antecedent to the explosion.

The defendant in the year 1918 leased to the owner of a garage at 360 First street, in Jersey City, a five hundred and fifty-gallon gasoline tank with a suction pump attached for the sale of gas, which the defendant installed under the sidewalk fronting the premises, and thereafter supplied gasoline to the garage owner. In March, 1921, the garage owner requested defendant to remove the tank and pump, and the defendant employed for the purpose one McKillop, a licensed plumber of Jersey City, to perform the work of removal, which the latter undertook to do by sending his workman to the premises for that purpose. The workmen excavated the street under a permit from the city, granted to the contractor for the purpose, and lifted the tank, which at the time contained from fifteen to twenty-five gallons of gasoline, and weighed from one thousand two hundred to one thousand five hundred pounds.

In the process of raising it the gasoline in the tank, by improper handling of the tank, escaped therefrom into the

gutter, and flowed along the gutter into the sewer basin at the corner of Brunswick and First streets. No effort was made by McKillop's employes to stop the flow of the fluid, or to impede its unrestricted flow into the sewer. Shortly thereafter, from some cause not distinctly in evidence, a fire took place in the oil-tainted gutter, which spread into the sewer basin. At that juncture the infant plaintiff, crossing the street, encountered the explosion which resulted in his injuries.

The contention of the plaintiff is that the work of removing the tank, under the circumstances, was inherently dangerous and tantamount to the existence of a nuisance, from the effect of which in its dangerous transmission the defendant could not legally absolve itself, by contracting the work out to another, citing *Cuff* v. *Newark and New York R. R. Co.*, 35 *N. J. L.* 17, and other cases in this and other jurisdictions illustrative of the correctness of that general principle. The difficulty in the application of that conceded rule of law to the case at bar is that we do not find in the case any evidence from which it can be reasonably inferred that the work of removing this tank was *per se* a nuisance, as was clearly established in such cases as *McAndrews* v. *Collerd*, 42 *Id.* 189.

We must judicially observe in this connection that gasoline is a motive fluid in general public use as was kerosene in the days preceding the introduction of gas and electricity, and that there is nothing inherently dangerous in its ordinary use, removal or carriage, as is attested by the thousands of gasoline vehicles in daily use in the state, as the prime means of transportation and travel. The danger arises not from its use in ordinary transportation, but from its negligent use or misuse in a dangerous environment. McKillop, the plumber licensed by the city for the purpose, we must assume, was possessed of the necessary reasonable mechanical instrumentalities for the performance of the work, as well as the necessary experience incident to his calling, and was not, in the absence of affirmative proof to the contrary, an improper person to whom to entrust the work of

removal. The burden of proving his unfitness, or the impropriety of employing him for the work under the circumstances, was upon the plaintiff, and the case seems to be devoid of such proof.

The question presented for legal solution in the situation is the legal relationship which existed between McKillop and the defendant in the performance of the work of removal. The rule is established beyond question, by innumerable authorities, that if the legal status of McKillop was that of an independent contractor, he alone and not the defendant is liable for the faulty or negligent execution of the work of removal.

Numerous cases, domestic and foreign, are cited by learned counsel to support this fundamental conception of contractual law, overlooking apparently the fact that, like the Pandects of Justinian, the tables of the law upon which this rule has for years been indelibly inscribed are securely deposited within the jurisdiction of our own venerable portals. Thus, in the well-considered case of *Cuff* v. *Newark, supra,* the diligent, learned and exhaustive opinion of Chief Justice Depue enunciates the principle dispositive of the controversy, viz.: "The rule is now firmly established that where the owner of lands undertakes to do a work, which in the ordinary mode of doing it is a nuisance, he is liable for any injuries which may result from it to third persons, though the work is done by a contractor exercising an independent employment, and employing his own servants; but when the work is not in itself a nuisance, and the injury results from the negligence of such contractor or his servants in the execution of it, the contractor alone is liable, unless the owner is in default in employing an unskillful or improper person as the contractor." This doctrine by frequent application has been emphasized in all subsequent adjudications in this court, and in the court of last resort. *Simon* v. *Henry,* 62 *N. J. L.* 487; *Reisman* v. *Public Service Corp.,* 82 *Id.* 464, 467; *Schutte* v. *United Electric Co.,* 68 *Id.* 435, 437; *Otmer* v. *Perry,* 94 *Id.* 73.

It is manifest from the testimony that the negligent act which was the origin of this accident, and which in legal contemplation was *causa causam* of the explosion, was not inherent in the work of removal itself, but inhered entirely in the negligent manner of operation of the employes of the contractor. Foresight for harm of the ordinary prudent man presents the determining test of tort-feasance in all situations of this character, and should have warned the servants of the contractor, that the indifferent and unprotected spreading of gasoline upon a public street, in a thickly-inhabited environment where fire is apt to be generated by the unsuspecting wayfarer, or where curious and ignorant children are apt to be attracted by its presence, as a means of pastime and amusement, may prove to be the proximate cause and superinducing condition of public danger and private injury. *Petry* v. *Hopping,* 97 *N. J. L.* 418.

But, manifestly, this legal responsibility of caution and care in this instance rested not upon the defendant, but upon the contractor to whom the work of removal had been delegated, for the case is devoid of proof that the work itself was inherently a nuisance, or that the contractor, under the well-settled rule to which we have adverted, was either an unfit or an improper person to entrust with its execution. He alone assumed the obligation of performance, and to his agents and servants was committed the control and execution of the work of removal, and he alone was liable for the consequence of their tort-feasance. Upon these uncontroverted facts a nonsuit or a verdict should have been directed for the defendant.

The judgment will therefore be reversed, to the end that a *venire de novo* issue.