# WALDEN ET UX. *v.* WEINSTEIN ET AL.

[No. 87, September Term, 1971.]

*Decided December 7, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*David Kayson* for appellants.

*Craig S. Rice,* with whom were *McInerney, Layne & McCormick* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

In this case one of the appellants, Leslie L. Walden [1] (Walden), was injured during construction of a sewer

---

1. The case is styled "Lessie", as all papers state. On deposition Walden said this was incorrect, that his name is "Leslie".

in a public street in the District of Columbia where he was employed by the Department of Sanitary Engineering. He and his wife seek to hold the abutting property owners responsible for the injuries sustained. We shall affirm the judgment entered in favor of the defendants when a trial judge determined at the end of the plaintiffs' case that the evidence adduced by the plaintiffs was legally insufficient to warrant submission of the case to the jury.

The facts are relatively simple. Samuel D. Weinstein (Weinstein) and his associates built a 110 unit apartment house in Washington. The rear of the apartment building fronted on Dunbar Road, S.E. The District of Columbia government was requested to extend the Dunbar Road sewer line from Stanton Road to Pomeroy Road to service the Weinstein property. The sewer was constructed in the bed of Dunbar Road. All of the men working on the project and their supervisors were employees of the District of Columbia government. Walden was injured when a cave-in took place at a point where the trench for the sewer was between 11 and 12 feet deep. It is claimed that the cave-in was caused by improper shoring.

It is apparent that Weinstein desired the sewer to be completed as soon as possible. The building was ready for occupancy for a month before the sewer construction began. In their printed argument Mr. and Mrs. Walden claim that Weinstein "offered beer to the crew and did buy them beer to hurry up the work," although in the statement of facts they say that Weinstein "testified that he did not tell the crew that if they hurried up the job he would buy them beer and that he [did] not know whether his foreman bought beer for the crew."

Walden contends "a builder is liable for the negligence of an independent contractor or government agency in the performance of work for the benefit of the builder." It is conceded that District of Columbia law is applicable.

Walden relies on *District of Columbia v. Blackman*, 32

App. D. C. 32 (1908), and *Merriam v. Anacostia National Bank,* 101 U. S. App. D. C. 190, 247 F. 2d 596 (1957). We do not find support for the Walden theory in either of these cases.

*Blackman* involved a claim for personal injuries sustained by a pedestrian falling into a hole in the sidewalk. The abutting landowner had applied to the District for a permit to make the excavation into which Blackman fell. A plumbing contractor was employed by the landowner to make the necessary excavation for the purpose of connecting with a sewer in the roadway. Conditions of the permit issued to the landowner included "that during the excavation of [the] work the trench be suitably guarded during the day, and that it be thoroughly covered and securely barricaded from sunset to sunrise, and that lighted red lamps be so placed before dark, every night, as to prevent accidents to persons or animals passing along the street." The accident took place in the afternoon at a time when "there was no protection whatever over or immediately around the excavation, which occupied about one-third of the width of the sidewalk." The court there said:

> "The hole was dug at their instigation and for their benefit, and they knew, or should have known, that unless it was properly protected serious consequences might arise. The accident that did ensue was the direct result of the work Lockhead under his contract with them had agreed to perform. The owner of a lot for whose benefit work like this is performed must take proper precaution to prevent the creation of a nuisance. He cannot escape liability for the natural and direct results that flow from digging a hole in a city sidewalk by hiding behind his contractor. *Robbins v. Chicago,* 4 Wall. [657,] 678, 18 L. Ed. [427,] 432 [(1867)]; *Cleveland v. King,* 132 U. S. 295, 33 L. Ed. 334, 10 Sup. Ct. Rep. 90 [(1889)]." *Id.* at 37-38.

Walden quoted this language, but did not quote the citations of authority. In *Robbins* the City of Chicago sought to obtain reimbursement from a landowner for sums the city had been obliged to pay an individual for injuries sustained by reason of a defective sidewalk. The Court said:

> "Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agrees and is authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party. *Hole v. Railway Co.,* 6 Hurlst. & Nor., 497; *Ellis v. Gas. Cons. Co.,* 2 Ellis & Bl. 767; *Newton v. Ellis,* 5 Ellis & Bl. 115; *Lowell v. B. & L. R.R.,* 23 Pick. 24; *Storrs v. Utica,* 17 N. Y. 104.

> "Implied authority was doubtless shown to construct the area, if it was done with proper precautions to prevent accidents to travelers, but no authority to construct it without such precautions is proved or can be presumed; and it is clear that in leaving it open and without guards during the progress of the work, or after its completion, the defendant was guilty of gross negligence, and the structure itself became unlawful. Concede that the defendant might cast the blame on the contractor while the area was being constructed, still it is clear to a demonstration that he cannot successfully make that answer for his own negligence after the work was completed, and the control and oversight of the contractor had ceased." *Id.* at 679.

574

*Cleveland v. King* involved the liability of a city to passers-by when a builder was permitted to deposit building materials in a part of the public street. Mr. Justice Harlan there said for the Court:

> "The fact that the permits to Rosenfeld and Kostering only authorized them to occupy one half of the street for the purpose of depositing building materials thereon, and required them to indicate the locality of such materials by proper lights, during the whole of every night that they were left in the street, did not relieve the City of the duty of exercising such reasonable diligence as the circumstances required, to prevent the street from being occupied by those parties in such a way as to endanger passersby in their use of it in all proper ways." *Id.* at 338.

In *Merriam* the claim involved personal injuries sustained from a fall on a defective sidewalk adjacent to the property of the bank on which a new building was being erected by a general contractor. The landowner was charged with creating a dangerous condition against which no warning or notice was given. The condition was claimed to have been created by trucks of an excavating subcontractor which used the sidewalk as a driveway, thus causing the breakup of the concrete surface. Judge (now Chief Justice) Burger there said for the court:

> "Where the public way is used by private parties for their own private and special use as distinguished from the use to which they are entitled as members of the public and that use creates a dangerous condition which causes injury to a pedestrian, both those creating the dangerous condition (here the subcontractor who is not a party) and those for whose special benefit the use has produced the dangerous condition may be liable in certain circumstances.

'An abutting owner who causes an excavation or obstruction to be made in or near a public highway in front of his premises in such a manner that injury to a traveler will result unless precautions are taken cannot let the work to an independent contractor and escape liability if such contractor fails to take the necessary precautions.' 27 Am. Jur. 523 (1940); *cf.* Prosser, *Torts* 144 (2d ed. 1955). Liability in such case would not rest on appellees by virtue of the negligence of the subcontractor but rather by their own acts or omissions.

"In other words, neither of the appellees could stand by knowing a dangerous condition was being created on the public sidewalk in furtherance of their respective private and special interests and be free from liability if they did nothing to protect the public from such danger. 'That part [of the public sidewalk] put to [an abutting landowner's] special use * * * is so subject to his control that the law places upon him the obligation to maintain it in a suitably safe condition for the public to use it as a part of the sidewalk. * * * The law imposes the duty because of the special use of the sidewalk and not more for one particular kind or special use than another.' " (Citing authorities.) *Id.* at 192.

A case somewhat similar to the present case is that of *Gibilterra v. Rosemawr Homes,* 19 N. J. 166, 115 A. 2d 553 (1955). There an employee of a plumbing contractor was injured when the side of a trench in which he was working collapsed. He sought to recover from the landowner as well as the steam shovel company which had done the excavation. Justice Brennan (now Mr. Justice Brennan) there said for the court:

"We agree that the dismissal should stand as against Rosemawr Homes, Inc. No proofs were

offered to sustain the allegations that Rosemawr was negligent in its selection of Vellone or in hiring the shovel and its operator from United. *Cf. Sarno v. Gulf Refining Co.*, 99 N.J.L. 340, 124 A. 145 (Sup. Ct. 1924), affirmed per curiam 102 N.J.L. 223, 130 A. 919 (E. & A. 1925); see *Prosser, Torts*, p. 252 (1941). In such case the general principle is that the landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work. *Broecker v. Armstrong Cork Co.*, 128 N.J.L. 3, 24 A. 2d 194 (E. & A. 1942); *Meny v. Carlson*, 6 N. J. 82, 89, 97, 77 A. 2d 245, 22 A.L.R.2d 1160 (1950)." *Id.* at 170.

Similar results were reached in *Virga v. Cervieri*, 308 N. Y. 702, 124 N.E.2d 328 (1954); *Davis v. Caristo Construction Corp.*, 216 N.Y.S.2d 765 (Sup. Ct., App. Div., 1st Dept. 1961); *Campoli v. Endicott Construction Services, Inc.*, 251 N.Y.S.2d 347 (Sup. Ct., App. Div., 3d Dept. 1964); and *Hurst v. Gulf Oil Corporation*, 251 F. 2d 836 (5th Cir. 1958). See also annotation "Sidewalk—Abutting Owner — Liability" 88 A.L.R.2d 331, 405-408 (1963), 41 Am. Jur.2d *Independent Contractors* §§ 24, 35 (1968), and 57 C.J.S. *Master and Servant* §§ 600-603 (1948).

The thread that runs through the cases is that for liability on the part of the landowner to exist there must be an element of control. Here we have no use of a public way for a private purpose as in some of the cited cases, but the construction of a public improvement by a municipal agency for the benefit of its citizens and property owners. Weinstein stood to benefit in no way different from any other landowner who might ultimately connect with the public sewer — as each landowner inevitably would be required to do as dwelling units were constructed. The element of control was completely lacking. The fact that the landowner desired the improve-

ments, might have been concerned by delay up to that point, and might have attempted to persuade or cajole the workmen to exert a bit more effort fails to supply the necessary element of control. He did not hire the employees, did not pay the employees, and did not supervise the employees. Construction was not by his plans and specifications. It would be manifestly improper to hold a person responsible for the negligence of a governmental agency completely beyond his control merely because some benefit to his property would accrue from the public improvement in connection with which the negligence took place.

*Judgment affirmed; appellants to pay the costs.*