**ALLIED CORPORATION, Plaintiff,**

v.

**James V. FROLA, et al., Defendants and Third Party Plaintiffs,**

v.

**BASF WYANDOTTE CORP., et al., Third Party Defendants.**

**and**

**EXXON COMPANY, U.S.A., et al., Third Party Defendants and Fourth Party Plaintiffs,**

v.

**ALCAN ALUMINUM CORP., et al., Fourth Party Defendants.**

Civ. A. No. 87–462.

United States District Court, D. New Jersey.

Feb. 14, 1990.

George W.C. McCarter, Richard L. Hertzberg, McCarter & English, Newark, N.J., for plaintiff.

Edward N. Fitzpatrick, John A. Avery, Robert J. Rohrberger, Clapp & Eisenberg, Newark, N.J., for defendants/third-party plaintiffs Frola and Von Dohln.

Mitchell H. Bernstein, Michele A. Giusiana, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., Thomas J. Schwarz, Richard S. Simon, Skadden, Arps, Slate, Meagher & Flom, New York City, George W.C. McCarter, McCarter & English, Newark, N.J., for third-party defendant Becker Paribas, Inc.

Frank L. Bate, Jonathan R. Lagarenne, Shanley & Fisher, P.C., Morristown, N.J., for third-party defendant BASF Corp.

John J. Carlin, Jr., Martin Cronin, Law Offices of John J. Carlin, Jr., P.C., Florham Park, N.J., for third-party defendants Exxon Co., U.S.A. and Exxon Research and Engineering Co.

Michael J. Beatrice, Hackensack, N.J., for third-party defendant Newton Refining Corp.

Gary H. Untracht, Maplewood, N.J., for third-party defendant Total Recovery, Inc.

## OPINION

WOLIN, District Judge.

In this suit under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675, plaintiff Allied Corporation ("Allied") moves for partial summary judgment on the amended counterclaim asserted by defendants James Frola and Albert Von Dohln. In addition, third-party defendants BASF Corporation ("BASF"), Becker Paribas Inc., Exxon Company, U.S.A. and Exxon Research and Engineering Company (hereinafter collectively Exxon), Newton Refining Corp. (formerly Ag–Met Oil Services, Inc.) and Total Recovery, Inc. variously move for dismissal of or summary judgment on Frola and Von Dohln's second-amended third-party complaint. The Court will grant Allied's motion in part and deny it in part. As to the third-party defendants' motions, the Court will dismiss the nuisance claims contained in count 1 of the second-amended third-party complaint; will dismiss counts 13, 14 and 16 of that complaint; and will dismiss count 17 insofar as it seeks contribution and indemnifi-

cation; but will otherwise deny the third-party defendants' motions.

## BACKGROUND

The present litigation is the most recent chapter in a long history of legal disputes over the cleanup of real property owned by Frola and Von Dohln and located at One River Road (also known as 163 River Road) in Edgewater, New Jersey. Frola and Von Dohln have owned the site since March 18, 1974. From approximately October 1974 to October 1981, they leased the site, or a portion thereof, to various entities for, among other things, the storage and recycling of oil. During the period of these leases, Frola and Von Dohln's tenants brought hazardous substances onto the site. On July 2, 1981, after discovering that hazardous substances were present at the site surface, the New Jersey Department of Environmental Protection (DEP) ordered all operations at the site to cease.

On March 29, 1985, the Environmental Protection Agency (EPA) notified approximately 91 parties that it had assumed the chief responsibility for control and cleanup of the site under CERCLA. The EPA offered the notified parties an opportunity to enter into an administrative consent order by which the parties themselves, rather than the EPA, would perform the cleanup, in exchange for an EPA covenant not to sue. Many of the parties, including plaintiff Allied and the moving third-party defendants, took the EPA up on its offer, either by undertaking to conduct the cleanup (in the case of Allied) or by contributing to a $5 million trust fund to partially reimburse Allied (in the case of the moving third-party defendants). Frola and Von Dohln did not take part in the EPA settlement. On October 16, 1985, the EPA issued an order under § 106 of CERCLA, 42 U.S.C. § 9606, ordering that Frola, Von Dohln and approximately 45 other non-settling parties perform certain cleanup, sampling and maintenance activities at the site.

Frola and Von Dohln initiated a civil action in the New Jersey Superior Court on November 18, 1985 against 123 parties (including settlors and non-settlors) seeking relief on various contractual and other common law causes of action. On February 5, 1987, while that action was pending, Allied filed the instant action against Frola and Von Dohln seeking recovery under CERCLA of its cleanup costs; Allied also seeks to recover the appreciation in fair market value of the property resulting from its "remediation" efforts and seeks to impose an equitable lien upon the property. As a result of the initiation of this action, the state court dismissed Frola and Von Dohln's claims without prejudice on May 15, 1987.

Frola and Von Dohln filed a counterclaim against Allied in the instant action, which they subsequently amended. They also filed a third-party complaint on April 26, 1988, which they amended on June 15, 1988. After this Court dismissed certain counts of the amended third-party complaint on December 13, 1988, *see* 701 F.Supp. 1084, Frola and Von Dohln amended their third-party complaint again on January 12, 1989.

## DISCUSSION

I. *Frola and Von Dohln's Counterclaims Against Allied*

In their amended counterclaim against Allied, Frola and Von Dohln assert various causes of action, including breach of covenant (count 1), negligent concealment or misrepresentation (count 2), nuisance (count 3), maintenance of an abnormally dangerous activity (count 4) and gross negligence or reckless indifference (count 5). Allied now moves for partial summary judgment dismissing all of these counts. The Court will first address the contract claim in count 1 and then the tort claims in the other counts.

█ Count 1 alleges that Allied breached the covenant against grantor's acts in the deed to Frola because the site was "charged and encumbered by asphalt, tars and oils containing hazardous substances and oils." Amended Counterclaim, count 1, ¶ 10. The deed, however, expressly states that it is "[s]ubject to covenants, easements, agreements and restrictions of record." The contract upon which the deed

is based provides, in a typed addition to the printed form: "Premises are sold 'as is.'" Allied argues that the "as is" clause precludes any cause of action in contract based on implied representations as to the condition of the property. The Court agrees.

■ The "as is" clause does not, however, extinguish all of Frola and Von Dohln's tort theories. Under New Jersey law, a predecessor landowner is absolutely liable under common law principles to a successor in title for environmental damage to the property caused by the predecessor. *T & E Industries v. Safety Light Corp.*, 227 N.J.Super. 228, 241–42, 546 A.2d 570, 577 (App.Div.1988). This liability may not be altered by contract unless the purchaser "knowingly accepts that burden." *Id.* Just as an "as is" clause does not defeat strict liability under CERCLA, *see Southland Corp. v. Ashland Oil*, 696 F.Supp. 994, 1001 (D.N.J.1988) (Fisher, J.), so too does it not alter common law strict liability. As Judge Barry of this Court recently held,

> I cannot accept the proposition that a party ignorant of the presence of an abnormally dangerous condition, may be held to have contractually assumed the risk posed by that condition merely by signing an 'as is' purchase contract. Under the Restatement and New Jersey law ... strict liability may be avoided only by a knowing agreement to accept the risk of an abnormally hazardous activity....

*Amland Properties Corp. v. Aluminum Company of America*, 711 F.Supp. 784, 801 (D.N.J.1989). While Judge Barry found that the contract in *Amland* did not amount to a knowing acceptance of the burden of environmental contamination, this Court is unable at the summary judgment stage to determine whether Frola and Von Dohln *knowingly accepted* the burden of contamination at the Edgewater site. Although there is evidence that Frola and Von Dohln knew of the coal tar processing activities at the site at the time of the March 1974 purchase, there is little, if any, evidence that they knew of the consequences of those activities.

With regard to the tort claims asserted in counts 2, 3 and 5 of Frola and Von Dohln's Amended Counterclaim, the Court is persuaded that they are either inapplicable or redundant in view of the strict liability claim pleaded in count 4. Both *T & E* and *Amland* teach that the proper tort theory to be applied in conflicts between successive landowners is that of strict liability. In rejecting *Amland*'s claim for nuisance, the court stated "... until a New Jersey court extends the nuisance rule to [disputes between successive landowners] it is not the place of a federal court, in the first instance, to do so." 711 F.Supp. at 808. As in *Amland*, here the claim for nuisance must likewise fall.

■ The negligence claim alleged in count 2 and its gross negligence counterpart contained in count 5 fail to state a legally cognizable duty sufficient to maintain the continued viability of these claims. Although the Court is unable to divine whether Frola and Von Dohln knew or had reason to know that the Edgewater site was contaminated, nothing in the record indicates that they were precluded from determining the existence of contamination. Given the opportunity to inspect the premises and to uncover evidence of contamination, the failure to do so or, alternatively, their participation in a less than satisfactory inspection of the premises specifically limits the liability of Allied. Restatement (2d) of Torts § 353(1)(a). The holding here is consistent with the dismissal of the negligence claim in *Amland*. *See Amland*, 711 F.Supp. at 810. Moreover, Frola and Von Dohln's strict liability claim adequately protects their interests and is consistent with traditional concepts of fault where an abnormally dangerous activity is maintained.

Accordingly, the Court will grant Allied's motion for partial summary judgment with respect to counts 1, 2, 3 and 5 of the Amended Counterclaim. The Court will deny its motion as to count 4.

## II. *Frola and Von Dohln's Third–Party Claims*

### (A) BASF and Exxon's Statute of Limitations Defense

In counts 1, 2 and 3 of their second-amended third-party complaint, Frola and

Von Dohln allege various theories of tortious injury to real property: intentional or negligent discharge of hazardous substances and strict liability in tort. Frola and Von Dohln seek both damages and injunctive relief in those counts. BASF and Exxon now move for summary judgment on those counts on the ground that they are barred by the statute of limitations. BASF and Exxon argue, and Frola and Von Dohln do not dispute, that because the injunctive relief is sought merely as an aid to a legal right, the statute of limitations for the legal right governs the timeliness of these claims. *See Farbenfabriken Bayer, A.G. v. Sterling Drug Inc.*, 197 F.Supp. 627, 629 (D.N.J.1961), *aff'd*, 307 F.2d 210 (3d Cir.), *cert. denied*, 372 U.S. 929, 83 S.Ct. 872, 9 L.Ed.2d 733 (1963). New Jersey has established a six-year statute of limitations for claims of tortious injury to real property, the period commencing when the cause of action accrues. N.J.S.A. § 2A:14–1. Under the "discovery rule," a cause of action does not accrue until a litigant knows or reasonably should know that he or she has a cause of action. *E.g., Viviano v. CBS, Inc.*, 101 N.J. 538, 546, 503 A.2d 296, 301 (1986); *Torcon, Inc. v. Alexian Brothers Hospital*, 205 N.J.Super. 428, 431–32, 501 A.2d 182, 184 (Ch.Div. 1985), *aff'd*, 209 N.J.Super. 239, 507 A.2d 289 (App.Div.), *certif. denied*, 104 N.J. 440, 517 A.2d 431 (1986). Frola and Von Dohln have acknowledged receiving notice from the DEP on October 12, 1981 that the site had been contaminated with hazardous substances. *See* Interrogatory Answer 35, Lagarenne Aff.Exh.B. Thus, BASF and Exxon contend, Frola and Von Dohln's cause of action accrued no later than that date,[1] and the statutory limitations period expired on October 12, 1987. Because Frola and Von Dohln did not commence their third-party action until April 22, 1988, BASF and Exxon contend, the claims in counts 1, 2 and 3 are time barred.

In opposition to the motion, Frola and Van Dohln argue that their cause of action did not accrue until March 29, 1985, the date the EPA notified them of the identity of potentially responsible parties. Under Frola and Von Dohln's interpretation of the case law, a cause of action does not accrue until a plaintiff is aware of his or her injuries and of an *identifiable defendant* against whom an action can be brought. *See Abboud v. Viscomi*, 111 N.J. 56, 62–63, 543 A.2d 29, 32 (1988). Noting that the essential purpose of the discovery rule is to avoid harsh results, the *Abboud* court held that a cause of action does not accrue "so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity." *Id; see also Vispisiano v. Ashland Chemical Co.*, 107 N.J. 416, 426, 527 A.2d 66, 71 (1987); *Torcon*, 205 N.J.Super. at 435, 501 A.2d at 186 ("It is only the identity of the party causing injury and the fact of injury that must be known."). Frola and Von Dohln contend that the requirement of an identifiable defendant is particularly crucial in a toxic tort case because, as the New Jersey Supreme Court has acknowledged, plaintiffs have great difficulty in such cases "identifying a large number of entities who are potentially responsible for improper waste disposal over a period of years." *Lamb v. Global Landfill Reclaiming*, 111 N.J. 134, 150, 543 A.2d 443, 451–52 (1988) (excusing, under N.J.S.A. § 59:8–9, plaintiffs' failure to meet the 90-day filing requirement of N.J.S.A. § 59:8–8 for bringing an action against a public entity because plaintiffs had made reasonable efforts to identify the responsible parties during the period of delay); *see also Ayers v. Jackson Township*, 106 N.J. 557, 581–82, 525 A.2d 287, 299 (1987).

Applying their theory, Frola and Von Dohln contend that when they received the DEP notice on October 12, 1981, they were not aware of an identifiable party that had

---

1. According to BASF and Exxon, the cause of action accrued even earlier than October 12, 1981 because Frola and Von Dohln allegedly knew of the contamination even before that date. Frola and Von Dohln deny any prior knowledge that toxic substances were on the property, though they admit they knew that recycled oil was being stored there. The Court finds the record inconclusive on this subject and will therefore assume for purposes of this motion that Frola and Von Dohln did not know of the contamination until October 12, 1981.

caused the environmental damage; the DEP notice did not identify the source of the PCBs but merely informed Frola and Von Dohln and their lessee, Quanta Resources, that PCBs were on the property. Even assuming that the DEP notice should have alerted them that Quanta Resources was a potentially responsible party—which Frola and Von Dohln deny—Frola and Von Dohln contend that Quanta would still not be an "identifiable party" because it was already in bankruptcy and thus could not be sued.

Disputing Frola and Von Dohln's theory, BASF and Exxon cite *Viviano, supra.* In that case the New Jersey Supreme Court held that a plaintiff's cause of action accrued when she became aware of her cause of action, even though at that time she did not know the identity of the wrongdoer or the specific part of a piece of machinery that caused her injury. 101 N.J. at 546–47, 503 A.2d at 300–01.

■ Analyzing the conflicting case law from the New Jersey Supreme Court—the weight of which emphasizes the importance of the identification of responsible parties—this Court holds that, at least in an environmental contamination case, a cause of action accrues in New Jersey when a plaintiff knows or reasonably should know of his or her cause of action and of the identity of a party or parties who may be responsible for the injury, in this case the dumping of hazardous substances on land. When there are numerous defendants, as there frequently are in environmental contamination cases, a plaintiff's cause of action as against each defendant accrues when he or she knows or reasonably should know the identity of that defendant as a potentially liable party.

■ The Court is unable to apply this rule to the present case because there are genuine issues of material fact as to when Frola and Von Dohln knew or should have known that BASF and Exxon were potentially liable to them for tortious injury to real property.

■ Frola and Von Dohln assert a second basis for why counts 1 through 3 are

not time barred. They contend that the dismissal of their state law claims by the May 15, 1987 order of the New Jersey Superior Court had the effect of either tolling the statute of limitations for their bringing of the third-party claims in this case or deeming any third-party complaint to relate back to the filing of Frola and Von Dohln's original complaint in the Superior Court. The Superior Court administratively terminated Frola and Von Dohln's action because of Allied's filing of its CERCLA claims in this Court. The court's order, which was entered sua sponte, included the following language:

> ORDERED, that party defendants who are identified on the list annexed to this Order and/or their counsel are requested to agree to accept service of process or shall advise this Court of their refusal to accept process of a Third–Party Complaint in the aforementioned Allied action filed in the United States District Court for the District of New Jersey, which may be filed by Messrs. Frola and Von Dohln therein.

Frola and Von Dohln rely on this language and on the fact that counsel for BASF and Exxon signed forms by which they agreed to accept service of process in the current third-party action as proof that the Superior Court implicitly tolled the statute of limitations for the bringing of their third-party complaint during the period that their action was pending in that court. Alternatively, Frola and Von Dohln contend, the filing of the third-party complaint should be deemed to relate back to the filing of their state court action. In support of their arguments, Frola and Von Dohln cite *Zaccardi v. Becker*, 88 N.J. 245, 440 A.2d 1329 (1982), in which the court permitted a second action to be filed after the limitations period had expired and after the first action had been dismissed two years earlier for failure of plaintiff to answer interrogatories. *Id.* at 257, 440 A.2d at 1335. It is true, as BASF and Exxon note, that the *Zaccardi* court's decision turned primarily on wrongful conduct on the part of the defendants. On the other hand, the *Zaccardi* court was also confronted with negligent conduct on the part

of plaintiffs' attorneys, who had caused the dismissal of the first action by their failure to answer interrogatories. In the present case, Frola and Von Dohln have not alleged that BASF or Exxon contributed to any delay. But neither did Frola and Von Dohln cause the dismissal of the first action, even if they may be faulted for not bringing their third-party complaint more expeditiously. Hence, none of the parties are as culpable as the parties in *Zaccardi.* The equities are thus similarly balanced and *Zaccardi* seems to apply to this case. Importantly, neither BASF nor Exxon has been prejudiced by Frola and Von Dohln's six-month delay in filing their third-party complaint because Frola and Von Dohln's state court action provided BASF and Exxon with notice of their claims well in advance of the expiration of the limitations period; BASF and Exxon have had "adequate warning to prepare their defense." *Zaccardi,* 88 N.J. at 258, 440 A.2d at 1335.

The Court therefore holds that the filing of the third-party complaint relates back in time to the filing of Frola and Von Dohln's complaint in the Superior Court. Accordingly, the Court will deny BASF and Exxon's motion for summary judgment on counts 1, 2 and 3 of the second-amended third-party complaint.[2]

### (B) Strict Liability Claims

Exxon moves to dismiss Frola and Von Dohln's strict liability claims on several grounds: first, that oil recycling is not an abnormally dangerous activity and thus does not give rise to strict liability, and that even if so, Frola and Von Dohln participated in and derived economic benefit from the oil recycling activity and hence cannot claim the benefit of strict liability; and second, that Exxon cannot be held strictly liable for the acts of its independent contractors. The Court rejects each of these arguments.

In support of its argument that oil recycling is not an abnormally dangerous activity, Exxon cites *Sarno v. Gulf Refining Co.,* 99 N.J.L. 340, 342, 124 A. 145, 146 (Sup.Ct.1924), *aff'd without opinion,* 102 N.J.L. 223, 130 A. 919 (E & A 1925), in which the court held that the ordinary use, removal and transportation of petroleum products is not inherently dangerous. That case, however, does not deal with disposal of by-products of petroleum recycling and in any event predates the modern environmental movement. Clearly, in light of today's knowledge about the pernicious effects of carcinogens such as PCBs, the disposal of such compounds is abnormally dangerous. *See State of New Jersey, Department of Environmental Protection v. Ventron Corp.,* 94 N.J. 473, 492–93, 468 A.2d 150, 160 (1983) (holding the disposal of mercury and other toxic wastes to be abnormally dangerous). Therefore the theory of strict liability is available to Frola and Von Dohln in the first instance. As for Exxon's argument that the theory is ultimately unavailable to Frola and Von Dohln because of their alleged knowledge of, participation in and economic benefit from the activities at the Edgewater site, the Court holds, as it did with regard to the counterclaim against Allied, that Frola and Von Dohln's state of mind is a question of material fact. It is unclear at this stage whether Frola and Von Dohln were witting accomplices to the PCB dumping or "innocent" third parties. *Cf. Berg v. Reaction Motors Division,* 37 N.J. 396, 410, 181 A.2d 487, 494 (1962); *Majestic Realty Associates v. Toti Contracting Co.,* 30 N.J. 425, 439, 153 A.2d 321, 328 (1959); *Donch v. Delta Inspection Services,* 165 N.J.Super. 567, 571, 398 A.2d 925, 927 (Law Div.1979).

---

**2.** Frola and Von Dohln's third argument is that the dumping of hazardous substances constitutes a continuing tort that tolls the running of the statute of limitations until permanent remedial action is taken. *See T & E,* 227 N.J.Super. at 243, 546 A.2d at 577 (applying the continuing tort theory, but not in the context of a statute of limitations). BASF and Exxon contend that the advent of the discovery rule has made the continuing tort theory unnecessary. *See Lamb,* 111 N.J. at 150, 543 A.2d at 451–52 (applying the discovery rule in a toxic tort case without reference to the continuing tort theory). Because of its ruling that the filing of the third-party complaint relates back to the filing of Frola and Von Dohln's state action, the Court need not address this argument.

Exxon's argument that it cannot be held strictly liable for the acts of its independent contractors rests on the assumption that oil recycling is not an abnormally dangerous activity. Since the Court has already rejected this assumption, the Court must reject Exxon's alternative argument. *See, e.g., Kenney v. Scientific, Inc.,* 204 N.J.Super. 228, 246, 497 A.2d 1310, 1319 (Law Div.1985).

### (C) Nuisance Claims

■ Exxon argues that Frola and Von Dohln's nuisance claims in the first count of the second-amended third-party complaint fail to state a claim against Exxon upon which relief can be granted because they allege only activities that occurred on the land in question; nuisance, by definition, involves acts by a defendant occurring off the land owned by a plaintiff. *See Ventron,* 94 N.J. at 488–89, 468 A.2d at 157–58 (citing traditional rule in historical discussion). Frola and Von Dohln are correct that New Jersey has long rejected formalistic distinctions between property-related torts. *See, e.g., id.* at 491, 468 A.2d at 159; *Kenney,* 204 N.J.Super. at 255, 497 A.2d at 1324. In so doing, however, New Jersey has moved toward strict liability as the favored theory in environmental pollution cases at the expense of nuisance and trespass. In contrast to their expansive application of strict liability, *e.g., Ventron,* 94 N.J. at 492–93, 468 A.2d at 160; *T & E,* 227 N.J.Super. at 242, 546 A.2d at 577, the New Jersey courts and this Court, when applying New Jersey law, have adhered to a narrow application of private nuisance theory, *e.g., Kenney,* 204 N.J.Super. at 255, 497 A.2d at 1324 (applying the traditional geographic limitation); *Amland,* 711 F.Supp. at 808 (refusing to extend the private nuisance doctrine to suits between successive landowners despite applicability of strict liability to that situation). In light of their strict liability claim, Frola and Von Dohln "do not need a remedy grounded upon nuisance.... There is no need for [them] to seek a grab bag of duplicitous causes of action." *Kenney,* 204 N.J.Super. at 255, 497 A.2d at 1324. Therefore the Court will grant Exxon's motion to dismiss count 1 of the second-amended third-party complaint to the extent that that count alleges nuisance.

### (D) Claims Under the Spill Act

In its December 13, 1988 opinion and order, this Court dismissed in part Frola and Von Dohln's claims in counts 13, 14 and 16 of their first-amended complaint, which sought relief under the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10–23.11 *et seq.* That legislation imposes strict liability upon "[a]ny person who has discharged a hazardous substance or is in any way responsible for any hazardous substance which the [New Jersey Department of Environmental Protection] has removed or is removing pursuant to [the Spill Act]." Spill Act § 8(c), N.J.S.A. § 58:10–23.11g(c). Noting that the Spill Act does not provide a private right of action, the Court addressed Frola and Von Dohln's attempt to impose Spill Act liability through the New Jersey Environmental Rights Act (ERA), N.J.S.A. § 2A:35A–1 *et seq.,* which provides that "[a]ny person may maintain an action in a court of competent jurisdiction against any other person to enforce, or to restrain the violation of, any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment." ERA § 4(a), N.J.S.A. § 2A:35A–4(a). Quoting *Superior Air Products Co. v. NL Industries, Inc.,* 216 N.J.Super. 46, 58, 522 A.2d 1025, 1032 (App.Div.1987), the Court noted that the ERA does not confer any substantive rights but grants standing to private persons to enforce the Spill Act (and other New Jersey environmental statutes) " 'as an alternative to inaction by the government which retains primary prosecutorial responsibility.' " The Court held that Frola and Von Dohln's substantive rights under the Spill Act through the ERA could not exceed their substantive rights under the Spill Act directly and that because Frola and Von Dohln could not recover damages under the Spill Act directly, they could not recover damages under the Spill Act through the ERA. Accordingly, the Court

dismissed counts 13, 14 and 16 as against all the third-party defendants insofar as the counts sought damages. Although the Court allowed those counts to survive insofar as they sought equitable remedies and attorney's fees pursuant to ERA § 10(a), N.J.S.A. § 2A:35A–10(a), the Court expressed doubt as to the availability of Spill Act or ERA relief at all where, as here, the federal government has acted to clean up contaminated property in the absence of DEP action (or, more accurately, in the wake of preliminary DEP action). The Court stated: "The logic of the ERA as an alternative to state governmental inaction would seem not to apply where the federal government has gone a long way toward cleaning up a site. This is especially so where, as here, the parties asserting the private right of action have declined to cooperate with the EPA in its efforts under CERCLA." Opinion of December 13, 1988, 701 F.Supp. 1084, 1091–92. The Court reserved judgment on the remainder of counts 13, 14 and 16 pending further development of the record.

The second-amended third-party complaint reasserts counts 13, 14 and 16 unamended. Third-party defendants BASF, Becker Paribas, Exxon, Newton Refining and Total Recovery now move for dismissal of or summary judgment on the remainder of the three counts. Frola and Von Dohln have conceded that they have no claims for equitable relief with respect to the surface contamination at the site because that contamination has been remediated. Rather, Frola and Von Dohln focus on *subsurface* contamination and seek injunctive relief in the form of an order requiring Allied and the third-party defendants to remediate any such contamination. Because neither the EPA nor the DEP has taken any remedial action with respect to subsurface contamination, Frola and Von Dohln contend that they have a right under the ERA to enforce the Spill Act with respect to such contamination.

◼ The third-party defendants raise several objections to Frola and Von Dohln's Spill Act/ERA claims for subsurface contamination. First, BASF and Becker Paribas argue that the issue of subsurface contamination was already litigated in the Superior Court. On December 11, 1986 that court dismissed Frola and Von Dohln's claims relating to subsurface contamination as premature because no such contamination had been discovered. The court ordered

> that plaintiffs [Frola and Von Dohln] may re-institute their claims in this action for damages arising out of subsurface contamination in the event that any such contamination is ascertained or evaluated or required to clean-up, or is the subject of a Remedial Investigation and Feasibility study with respect to plaintiffs' ... property, or claim is made with respect thereto by EPA and/or DEP.

According to BASF and Becker Paribas, none of the specified events has transpired and Frola and Von Dohln are therefore collaterally estopped from asserting claims for subsurface contamination at this time. *Cf. Township of Howell v. Waste Disposal, Inc.,* 207 N.J.Super. 80, 93–94, 504 A.2d 19, 25–26 (App.Div.1986). At oral argument, however, counsel for Frola and Von Dohln revealed that the EPA has in fact discovered subsurface contamination at the site. In a March 31, 1988 report, the EPA's on-scene coordinator for the Edgewater site disclosed "probable widespread subsurface contamination." Avery Certif.Exh. at 73. Although the EPA coordinator found no PCBs in the subsurface water, he discovered elevated levels of phenol, toluene, naphthalene, benzene, dimethyl phenol and ethyl benzene. *Id.* at 70. Since one of the conditions listed in the Superior Court's order has come to pass, Frola and Von Dohln are not barred from asserting ERA claims for subsurface contamination.

◼ Picking up on this Court's dicta in its prior opinion, the third-party defendants next argue that Spill Act relief is inappropriate in this case because the EPA (superseding the DEP) has gone a long way toward cleaning up the site. At the time of its prior opinion, however, the Court was not aware of the distinction in this case between surface and subsurface contamination. Although the EPA has begun in-

vestigating subsurface contamination at the Edgewater site, neither it nor the DEP has undertaken any subsurface removal action. It is true that the ERA aims primarily to correct governmental inaction, that is, where the DEP "has failed in its mission, ... neglected to act in the best interest of the citizenry or has arbitrarily, capriciously or unreasonably acted." *Township of Howell v. Waste Disposal, Inc.,* 207 N.J. Super. 80, 96, 504 A.2d 19, 27 (App.Div. 1986); *see also Ironbound Health Rights Advisory Commission v. Diamond Shamrock Chemical Co.,* 216 N.J.Super. 166, 174, 523 A.2d 250, 255 (App.Div.1987); *Superior Air Products,* 216 N.J.Super. at 61, 522 A.2d at 1033. But the ERA may also be used as a *supplement* to actions that the government has taken. "[I]n a given situation DEP may seek less than full relief available under relevant legislation. In such a case, there is a clear right granted to other 'persons' to seek such relief under the Environmental Rights Act." *Township of Howell,* 207 N.J.Super. at 96, 504 A.2d at 27; *see also Ironbound Health Rights,* 216 N.J.Super. at 174, 523 A.2d at 255 ("Even if the State takes action, a citizen may under some circumstances 'supplement' that action ... by directly pursuing the polluter."); *Superior Air Products,* 216 N.J.Super. at 61, 522 A.2d at 1033 ("[E]ven where DEP enforces the Spill Act, a private cause of action may still lie if the effort provided by DEP enforcement proves insufficient."). If, despite their commendable efforts with respect to surface contamination, both the DEP and the EPA—because of lack of resources or whatever other reason—ultimately decline to lead the cleanup of the subsurface contamination at the Edgewater site, this case might be the perfect example of how an ERA action may be used to supplement governmental efforts. Therefore, contrary to its earlier dicta, 701 F.Supp. at 1091–92, the Court holds that ERA relief might very well be available in the present case.

■ Addressing the third-party defendants' third argument, the Court holds that Frola and Von Dohln are suitable parties to bring an ERA action. In its earlier opinion the Court stated in dicta that Frola and Von Dohln might be precluded from asserting an ERA claim because of their failure to cooperate with the EPA's prior and current efforts. 701 F.Supp. at 1091–92. A review of the ERA reveals, however, that it empowers "[a]ny person" to bring an action to enforce environmental statutes such as the Spill Act. ERA § 4(a), N.J.S.A. § 2A:35A–4(a). The ERA is founded on a legislative finding that "the integrity of the State's environment is continually threatened by pollution, impairment and destruction, that *every person* has a substantial interest in minimizing this condition, and that it is therefore *in the public interest* to enable ready access to the courts for the remedy of such abuses." ERA § 2, N.J.S.A. § 2A:35A–2 (emphasis added). Although Frola and Von Dohln are seeking to enforce their own rights under the ERA, and although they would certainly benefit from the removal of the contamination from beneath the surface of their property, they are also seeking to vindicate the *public's* interest in a clean environment. No one—not even those who have not cooperated with the DEP or EPA—should be precluded from asserting the public's rights under the ERA. That an individual litigant may have "unclean hands"[3] is irrelevant when the individual seeks to clean up the environment in the name of the public.

■ Finally, BASF contends that Frola and Von Dohln's Spill Act claims are preempted by § 114(b) of CERCLA, 42 U.S.C. § 9614(b). That section provides: "Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law." In *Exxon Corp. v. Hunt,* 475 U.S. 355, 106

---

3. The Court does not rule on Becker Paribas's argument that Frola and Von Dohln's noncooperation with the governmental agencies leaves them with "unclean hands" in the equitable sense. The Court further notes that their failure to cooperate is mitigated by the fact that they apparently did not cause the environmental contamination and that they have expended substantial sums of their own money to clean up the site.

S.Ct. 1103, 89 L.Ed.2d 364 (1986), the Supreme Court held that Congress intended the three-part phrase "removal costs or damages or claims" to be read as a unit and to provide a shorthand for the authorized uses of Superfund. *Id.* at 369, 106 S.Ct. at 1112–13. BASF argues that under this holding, once funds are expended pursuant to CERCLA to perform removal costs at a site, analogous state law claims are preempted. In the present case, Allied used the trust fund provided by BASF and others to perform an EPA-specified removal action pursuant to CERCLA. Moreover, according to BASF, Frola and Von Dohln are persons who have received "compensation" within the meaning of § 114(b) because they are the owners of the site that has been cleaned up. The Court rejects BASF's contention that the Spill Act claims are thus preempted. Assuming, without deciding, that Frola and Von Dohln have received "compensation for removal costs or damages or claims" pursuant to CERCLA in the form of an increase in the value of their property because of Allied's cleanup efforts, the Court notes that such compensation pertains only to surface contamination, and not to contamination at the subsurface level. Frola and Von Dohln's claims for subsurface removal are therefore not claims for "the same removal costs" for which they have presumably received compensation under CERCLA. The Court declines to read the phrase "same removal costs" to necessarily encompass all removal costs at a given site. Where there is a clear distinction between two or more categories of contamination at a site (*e.g.*, surface vs. subsurface), the issue of CERCLA preemption must be resolved separately for each category of contamination.

■ There is, however, a procedural problem with Frola and Von Dohln's ERA claims that none of the third-party defendants has raised: they are premature, but not, as already noted, because of the prior order of the Superior Court. The claims are premature because neither the DEP nor the EPA has necessarily completed its removal actions at the Edgewater site. Until the agencies have completed their actions, the Court is in no position to assess the sufficiency of those actions. As noted in *Superior Air Products,*

> pursuit of the private ERA claim must await DEP action in order to assess the sufficiency of its efforts, actions and remedy. Hence, DEP's action under the Spill Act is preemptive of private rights under ERA at least where the DEP acts prior to or upon filing of an ERA proceeding and where the DEP action subsequently proves sufficient to protect the environment.

216 N.J.Super. at 61, 522 A.2d at 1033. Although this interpretation of the Spill Act by New Jersey's intermediate appellate court is not binding on this Court,[4] it makes eminently good sense and this Court will therefore adopt it. When the EPA has either announced its termination of cleanup activities at the Edgewater site or appears to have abandoned its efforts there, the DEP will have an opportunity to resume its leadership role and to take any further action that it deems in the interest of the citizens of New Jersey. If, when both agencies have completed their activities, the subsurface contamination has still not been remediated, Frola and Von Dohln may refile their ERA claims to enforce the Spill Act. Only then will this Court (or the New Jersey Superior Court, if this action is no longer pending) be in a position to evaluate the sufficiency of the DEP's actions—when combined with the EPA's actions—and determine whether any further cleanup of the Edgewater site is in the public interest.

Accordingly, the Court will dismiss counts 13, 14 and 16 of Frola and Von Dohln's second-amended third-party complaint without prejudice to their right to refile the claims contained therein upon the completion of the EPA's and DEP's cleanup efforts at the site. This dismissal will apply to all third-party defendants against

---

4. *Commercial Union Insurance Co. v. Bituminous Casualty Corp.,* 851 F.2d 98, 100 (3d Cir. 1988). In the absence of an authoritative pronouncement by a state's highest court, however, decisions of an intermediate appellate court are presumptive evidence of state law and should be given proper regard. *Id.*

**638**

whom those counts are asserted, not just the movants.

### (E) Claims for Contribution

█ In count 17 of their amended third-party complaint, Frola and Von Dohln seek contribution from the various third-party defendants pursuant to the New Jersey Joint Tortfeasor Contribution Act, N.J.S.A. § 2A:53A–1, for any amount that Allied may recover from Frola and Von Dohln. Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), addresses the effect CERCLA settlements have on non-settling parties and provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in a settlement."[5] In light of § 113(f)(2), Frola and Von Dohln concede that they may not recover from BASF or any of the other settling parties any sums expended by Allied for tasks enumerated in the EPA administrative consent order. Frola and Von Dohln contend, however, that their contribution claim is valid to the extent that Allied seeks to recover from them for costs inconsistent with the consent order or for non-CERCLA liability; these contribution claims are not precluded by § 113(f)(2). The Court agrees. On the face of its complaint Allied seeks "[a]ll costs of removal or remedial action at the site incurred by Allied, not inconsistent with the [administrative consent order]" as well as "[a]ll other necessary costs of response at the site incurred by Allied including costs of response in excess of the Trust Fund amount." The scope of Allied's catchall clause is unclear at this time, but it is possible that Allied may seek to recover from Frola and Von Dohln sums expended on cleanup outside the scope of the consent order. Therefore the Court will deny BASF and Exxon's motion for summary judgment on count 17 to the extent that

that count seeks contribution for liability outside the scope of the EPA administrative consent order.

█ With regard to matters within the scope of the consent order, however, the Court finds that BASF, Exxon and the other settling third-party defendants are entitled to partial summary judgment to the extent that count 17 seeks contribution. Although Frola and Von Dohln argue that they have a right to keep those third-party defendants in the case in order to determine whether they are joint tortfeasors and what percentage of fault is attributable to the settling parties, their position is contrary to the weight of statutory and decisional authority. Despite the Court's refusal to dismiss a contribution claim against a settling party in *Lyncott Corp v. Chemical Waste Management, Inc.*, 690 F.Supp. 1409, 1419 (E.D.Pa.1988), a subsequent and more synergic view of contribution claims in a CERCLA case is found in *In re Acushnet River and New Bedford Harbor*, 712 F.Supp. 1019 (D.Mass.1989), and *United States v. Rohm & Haas Co.*, 721 F.Supp. 666 (D.N.J.1989).[6] In both of these cases the Court, after an analysis of the specific language contained in § 113(f)(2), determined that the language employed was completely incompatible with any theory of comparative negligence. This interpretation is consistent with the congressional purpose of encouraging settlement of CERCLA cases. It provides the settlors with a statutory signal that any settlement they reach would end their liability in the case. Hence, by a settlement their liability in the case is extinguished. Since the non-settlors remain jointly and severally liable, they must make good the balance regardless of whether the settlor pays less than its proportionate share of liability. *In re Acushnet*, 712 F.Supp. at 1027.

---

5. This provision, like many others in CERCLA, was added by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. 99–499 ("SARA"), and became effective on October 17, 1986.

6. The *Lyncott* court applied the Uniform Comparative Fault Act approach to a post-SARA settlement. Although a theory of comparative fault was employed by EPA on the pre-SARA settlements, its application after the adoption of the SARA amendments to CERCLA is chimerical.

Undoubtedly, the SARA amendments to CERCLA were intended to expedite effective remedial actions and to minimize litigation. *City of New York v. Exxon Corp.,* 697 F.Supp. 677, 693 (S.D.N.Y.1988). Neither the Uniform Contribution Among Tortfeasors Act ("UCTA"), 12 Uniform Laws Annotated 63 (1975), nor the Uniform Comparative Fault Act ("UCFA"), U.L.A. pocket part 40 (1989), were able to achieve these legislative driven imperatives. By enacting § 113(f)(2) the congressional directive is that non-settling defendants' contribution claims will be barred, and they will be credited only with the amount of the settlement and nothing more. *Rohm & Haas,* 721 F.Supp. at 677.

Accordingly, the Court will grant the request for summary judgment on the count 17 contribution claims for all matters included within the consent order between the EPA and the settlors.

### (F) Claims for Indemnification

■ In count 17 Frola and Von Dohln also seek indemnification from the third-party defendants. Although it does foreclose most contribution claims, CERCLA does not restrict the right to common law indemnification. *See* H.R.Rep. No. 253, 99th Cong., 2d Sess. 19, *reprinted in* 1986 U.S.Code Cong. & Admin. News 2835, 3038, 3042; *cf. Caldwell v. Gurley Refining Co.,* 755 F.2d 645, 652 (8th Cir.1985).

Indemnification is available under New Jersey law in two situations: when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification. In either case a party is entitled to indemnification only if he or she is without fault and his or her liability is purely constructive, secondary or vicarious. *See, e.g., Nivins v. Sievers Hauling Corp.,* 424 F.Supp. 82, 87–88 (D.N.J.1976); *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 N.J. 55, 79–80, 159 A.2d 97, 109–10

(1960); *Port Authority v. Honeywell Protective Services,* 222 N.J.Super. 11, 20, 535 A.2d 974, 978 (App.Div.1987). Frola and Von Dohln do not assert an explicit right to indemnification but rather an implied right based on the three-way relationship between them, their lessees and the generators such as BASF and Exxon. It is true that a lessor-lessee relationship may be a "special" enough relationship to give rise to indemnification. *Ruvolo v. United States Steel,* 133 N.J.Super. 362, 367–68, 336 A.2d 508, 511 (Law Div.1975); *see Nivins,* 424 F.Supp. at 87.[7] But Frola and Von Dohln never had a lessor-lessee relationship with BASF or Exxon, nor did they ever even deal directly with those parties. The Court will not stretch the narrow meaning of "special relationship" to apply in such circumstances. Thus, regardless of whether Frola and Von Dohln are free of fault and whether their liability is secondary to that of the third-party generators,[8] they are not entitled to indemnification because they have not met the prerequisite of a special legal relationship. Therefore the Court will grant BASF and Exxon's request for summary judgment on count 17 to the extent that it seeks indemnification.

### CONCLUSION

The Court will grant in part and deny in part Allied's motion for partial summary judgment, as follows: the Court will grant Allied summary judgment on counts 1, 2, 3 and 5 of the amended counterclaim but will deny the request with respect to count 4. The Court will deny the motions of the third-party defendants with three exceptions: the Court will dismiss count 1 of the second-amended third-party complaint to the extent that that count asserts a theory of nuisance; the Court will dismiss counts 13, 14 and 16 as against all third-party defendants without prejudice to Frola and Von Dohln's right to reassert those claims

---

7. Other such "special" relationships are that of union-member, employer-employee and principal-agent. *See Nivins,* 424 F.Supp. at 87; *Port Authority,* 222 N.J.Super. at 20, 535 A.2d at 978; *Hagen v. Koerner,* 64 N.J.Super. 580, 588, 166 A.2d 784, 788 (App.Div.1960).

8. BASF argues in its reply brief that the record conclusively establishes that Frola and Von Dohln are culpable parties. The Court expresses no opinion on this subject and finds the record on this point inconclusive.

in accordance with this opinion; the Court will grant summary judgment to BASF and Exxon on the count 17 contribution claims for all matters included within the consent order between the EPA and the settlors; and the Court will dismiss count 17 as against the movants insofar as it seeks indemnification.

An appropriate order is attached.

### ORDER

This matter having been opened to the Court by attorneys for plaintiff Allied Corporation ("Allied"), third-party defendant BASF Corporation ("BASF") and third-party defendants Exxon Corporation, U.S.A. and Exxon Research & Engineering Company (hereinafter referred to collectively as "Exxon"), and the Court having reconsidered its order of September 20, 1989 in this case, and for good cause shown,

It is on this 13th day of February, 1990

ORDERED that the parties' motions for partial reconsideration are granted; and it is further

ORDERED that the Court's order of September 20, 1989 is hereby vacated; and it is further

ORDERED that the opinion issued this date is substituted for that issued on September 20, 1989 which is now withdrawn; and it is further

ORDERED that Allied's motion for partial summary judgment is granted as to Counts 1, 2, 3 and 5 of the Amended Counterclaim but denied as to count 4; and it is further

ORDERED that the third-party defendants' motion to dismiss Counts 1 through 3 of the Second Amended Third Party Complaint is denied; and it is further

ORDERED that Exxon's motion to dismiss the strict liability claims contained in Counts 1 through 3 of the Second Amended Third Party Complaint is denied; and it is further

ORDERED that Exxon's motion to dismiss Count 1 of the Second Amended Third Party Complaint insofar as it alleges nuisance is granted; and it is further

ORDERED that the third-party defendants' motion to dismiss Counts 13, 14 and 16 of the Second Amended Third Party Complaint is granted without prejudice to Frola and Von Dohln's opinion, and this ruling is applied sua sponte to all third-party defendants, not solely the movants; and it is further

ORDERED that the third-party defendants Exxon and BASF's motions to dismiss Count 17 of the Second Amended Third Party Complaint are granted insofar as that count seeks indemnification and insofar as it seeks contribution pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675 for matters within the scope of the Consent Orders entered into between the United States Environmental Protection Agency and Allied Corporation and Exxon.