In re HAWAII DAIICHI–KANKO, INC., Debtor.

Cale W. CARSON, as Distributing Trustee in Reorganization for Hawaii Daiichi-Kanko, Inc., and not individually, Plaintiff,

v.

MAKAHA VALLEY, INCORPORATED, a Hawaii corporation, Defendant.

Bankruptcy No. 76–0192(2).

United States Bankruptcy Court, D. Hawaii.

Nov. 1, 1982.

---

James A. Wagner, Honolulu, Hawaii, for trustee.

John Jubinsky, Honolulu, Hawaii, for Makaha Valley.

Thomas Gill, Honolulu, Hawaii, for unsecured creditors.

## MEMORANDUM DECISION AND ORDER

JON J. CHINEN, Bankruptcy Judge.

On August 9, 1982, Plaintiff, Cale W. Carson, as Trustee of Hawaii Daiichi-Kanko, Inc. (hereinafter "Trustee"), moved this Court for summary judgment in favor of the Trustee and against Defendant, Makaha Valley, Inc. (hereinafter "MVI"), based on Count I of the Complaint for Specific Performance and Damages, filed on March 23, 1982. On September 7, 1982, MVI filed a Counter-Motion for Summary Judgment in favor of MVI and against the Trustee on all counts of the Complaint filed herein.

On September 22, 1982, a hearing was held on the Trustee's Motion for Summary Judgment and MVI's Counter-Motion for Summary Judgment, at which time James A. Wagner, Esq., appeared as attorney for the Trustee; John Jubinsky, Esq., appeared as attorney for MVI; and Thomas Gill, Esq., appeared on behalf of certain unsecured creditors.

Two issues were presented to this Court:

1. Whether that certain Contract of Sale covering the sale of certain real property at Makaha, Oahu, Hawaii, obligated MVI to provide water to the 44 acres of unimproved land.

2. Whether the Contract of Sale survived the reorganization proceeding.

Based upon the memoranda submitted, the affidavits filed in support thereof, the files and records of this adversary proceeding, and the files and records of that certain proceeding entitled, *In Re Hawaii Daiichi-Kanko, Inc.,* —— B.R. ——, Debtor, Bk. No. 76–0192, and the arguments of counsel, the Court finds as follows:

On March 21, 1973, MVI entered into a Contract of Sale with Daiichi-Kanko Kaihatsu, Ltd. (hereinafter "DKK") for the purchase and sale of that certain real property situated in Makaha Valley, City and County of Honolulu, State of Hawaii, referred to as "Makaha Inn and Country Club." The property covered by the Contract of Sale included both the developed inn and country club and certain undeveloped property adjacent thereto.

On April 18, 1973, DKK formed Hawaii Daiichi-Kanko, Inc. (hereinafter "Debtor") as a wholly-owned subsidiary and assigned all of its rights and obligations under the Contract of Sale to Debtor. Pursuant to the Contract of Sale, Debtor paid Defendant $4.2 million in cash at closing on April 26, 1973, and executed and delivered a Promissory Note to MVI in the amount of $10 million, which note was secured by a 10-year Purchase Money First Mortgage on the property.

On May 20, 1976, Debtor filed for relief under Chapter X of the Bankruptcy Act of 1898. In conjunction with the petition, Cale W. Carson, (hereinafter "Trustee"), was appointed as trustee in reorganization for Debtor.

Since his appointment, the Trustee had great difficulty in operating the Makaha Inn and Country Club as a going concern. As stated in the Trustee's Amended Plan of Reorganization filed on April 21, 1977,

> Lack of revenues has made the trustee unable to pay real property taxes, to pay interest or principal on secured debts, to pay accrued and delinquent unsecured debts, to perform needed renovation, or to engage in a program of "preventive maintenance".

As a result, after lengthy negotiations, the Trustee and various creditors, including MVI, agreed to an Amended Plan of Reorganization, hereafter "Plan", which was approved by the Court.

The Plan called for a satisfaction of Debtor's obligations by means of a three-stage process. In the first stage, Debtor's real property, consisting of the Makaha Inn, a golf course and 51 acres of undeveloped land were to be reconveyed by Trustee to MVI, subject to the conveyance provisions of stages two and three of the Plan. The second stage of the Plan called for the Trustee to secure a third-party purchaser for all of the property by December 31, 1977. If the Trustee failed to secure such a purchaser by December 31, 1977, the Plan provided that MVI would then hold the Inn and seven acres of adjacent undeveloped land free and clear of the Plan. Under the third stage, the remaining undeveloped property, hereafter referred to as the "44 acres", would be held by MVI for a period of five years, subject to the Trustee's right to find a third-party purchaser. Any portion of the 44 acres remaining unsold on December 31, 1982 would be offered at public auction first at an upset price of $3,100,-000 and failing a buyer at that price at the best price obtainable and in any event subject to the approval of the Court.

The Trustee was unable to secure a third-party purchaser pursuant to stage two, and thus MVI has acquired the Makaha Inn and seven acres free and clear of the Plan. The Trustee now has until December 31, 1982 to sell the 44 acres or thereafter to cause the sale at public auction.

On March 23, 1982, the Trustee filed herein a Complaint for Specific Performance and Damages which alleged that MVI was obligated and had refused to provide and develop water on the 44 acres under the Contract of Sale entered into by MVI and Debtor's predecessor in interest, and further alleged that MVI's refusal had prevented the Trustee from finding a purchaser.

On August 9, 1982, Trustee filed a Motion for Summary Judgment on the issue of whether MVI was obligated to provide water for the 44 acres. In response, MVI filed a Counter-Motion for Summary Judgment.

■ The Court finds it unnecessary to construe the provisions of the Contract of Sale. As a matter of law, the Contract of Sale was extinguished and superseded by the reorganization proceedings. Accordingly, the Trustee's motion for summary judgment is denied and MVI's counter-motion is granted.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Jones v. Halekulani Hotel, Inc.,* 557 F.2d 1308 (9th Cir.1977). The parties agree there are no such issues and summary judgment is appropriate in this case.

■ Although the Bankruptcy Act of 1898 has been repealed and replaced by the Bankruptcy Reform Act of 1978, proceedings commenced before the effective date of the new Act continue to be bound by the provisions of the old Act. Section 403(a), Bankruptcy Reform Act of 1978, 11 U.S.C. 403(a); *In re Huntington, Ltd.,* 654 F.2d 578, 581 n. 2 (9th Cir.1981); 1 *Collier on Bankruptcy,* ¶ 7.03 (15th ed. 1982).

For the purpose of ruling upon the motion and counter-motion, the Court will treat the Contract of Sale as an executory contract within the meaning of Section 116(1) of the Bankruptcy Act of 1898, which could be assumed or rejected by the Trustee as an asset of the Debtor's estate. The Court finds that the Contract of Sale was never assumed by the Trustee.

Although an assumption of an executory contract may be shown by the acts or oral statements of the trustee as well as by written declaration, *In re Huntington, supra,* at 587, the facts presented to the Court indicate that there has been no assumption. The Report of Operations and Management of Property of Hawaii Daiichi-Kanko, Inc. filed herein by the Trustee on July 26, 1976 makes no mention of the Contract of Sale, even though the report purported to cover contractual obligations assumed by the Trustee. There is also no mention in the Plan of an assumption or other disposition of the Contract of Sale by the Trustee.

Once a trustee assumes an executory contract, he is bound to perform all of the covenants and obligations therein:

> An assumption carries with it all of the burdens as well as the benefits of the contract. The trustee or debtor in possession, so long as the contract remains in force and is not assigned, is obligated to render performance .... 6 *Collier on Bankruptcy,* ¶ 3.24[2] (14th ed. 1978).

*See also In re Steelship Corp.,* 576 F.2d 128, 132 (8th Cir.1978). In the instant case, Debtor's payment obligations under the Contract of Sale continued to remain in default until the adoption of the Plan.

■ Under Chapter X an assumption of an executory contract, in order to be effective, must be expressly approved by the Court. *In re Huntington, supra,* at 587 n. 15; *In re American National Trust,* 426 F.2d 1059, 1064 (7th Cir.1970); *Texas Importing Co. v. Banco Popular de Puerto rico,* 360 F.2d 582, 584 (5th Cir.1966); 6 *Collier on Bankruptcy,* ¶ 3.23[5] (14th ed. 1978). No such approval has ever been given.

■ In addition, any rights and obligations under the Contract of Sale were extinguished by the Plan. The Affidavit of John Jubinsky, uncontroverted by the Trustee, states that the understanding of those participating in the formulation of the Plan was that the 44 acres would be conveyed to a third-party purchaser in its undeveloped state. The Plan expressly states that the 44 acres would be conveyed "as is". The term "as is", when applied to a sale, means that the property will be sold in its then-existing physical condition. *Johnson v. Waisman,* 93 N.H. 133, 36 A.2d 634, 636 (1944); *Williams v. McClain,* 180 Miss. 6, 176 So. 717, 719 (1937).

In *Flinn v. Treadwell,* 120 Colo. 117, 207 P.2d 967 (1949), where a building permit for the construction of a garage stated that the front yard was to remain "as is", though the home owner had exhibited the building plans to the city building inspector, the court held that, if the garage reduced the area of the front yard, then it was a violation of the permit and the city ordinance. The court stated

> "As is" has no other meaning than that the front yard in all of its dimensions was to be, and remain the same after the construction as before.

In *Redner v. City of New York,* 53 Misc.2d 148, 278 N.Y.S.2d 51 (1962), where the purchase of real property was involved and the definition of the phrase "as is" was in question, the Court stated:

> It ["as is"] merely means that the purchaser must take that for which he bargained, reasonable use, wear, tear and natural deterioration excepted.

■ In the instant case, the Plan was duly confirmed by this Court. Section 224(1) of the Bankruptcy Act of 1898 states:

> SEC. 224. Upon confirmation of a plan—
>
> (1) the plan and its provisions shall be binding upon the debtor, upon every other corporation issuing securities or acquiring property under the plan, and upon all creditors and stockholders, whether or not such creditors and stockholders are affected by the plan or have accepted it

or have filed proofs of their claims or interest and whether or not their claims or interests have been scheduled or allowed or are allowable . . . .

Section 226 of the Bankruptcy Act of 1898 states:

SEC. 226. The property dealt with by the plan, when transferred by the trustee to the debtor or other corporation or corporations provided for by the plan, or when transferred by the debtor in possession to such other corporation or corporations, or when retained by the debtor in possession, as the case may be, shall be free and clear of all claims and interests of the debtor, creditors, and stockholders, except such claims and interests as may otherwise be provided for in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of such property.

The Court holds, based upon a reading of these two statutes, that Congress intended that the terms of the Plan be binding upon the parties herein and that all property dealt with by the Plan should emerge free of all obligations except those specifically enumerated in the Plan. The Plan contemplated that the property be conveyed in an "as is" condition and nowhere in the Plan is there language obligating MVI to provide or develop water for the 44 acres.

Finally, pursuant to the Plan, the 44 acres were conveyed by the Trustee to MVI by means of a quitclaim deed which purported to pass "all of the estate, right, title and interest of the Grantor, both at law and at equity, therein and thereto."

A quitclaim deed is to be construed according to its ordinary legal significance and is sufficient to transfer all interest which the grantor possesses. *Christian v. Waialua Agricultural Co.,* 35 Hawaii 352, 373 (1940); *Buller v. Buller,* 62 Cal.App.2d 694, 145 P.2d 653, 655 (1947); *M.C. Dixon Lumber Co., Inc. v. Mathison,* 289 Ala. 229, 266 So.2d 891, 849 (1972). The Trustee no longer has any interest in the 44 acres which can be enforced against MVI save and except the duty to compel the conveyance of the property "as is" to a third-party purchaser.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Trustee's Motion for Summary Judgment is denied and MVI's Counter-Motion for Summary Judgment is granted, and the Complaint is dismissed.