John P. PITRE and Sydney
H. Pitre, Plaintiffs,

v.

The TWELVE OAKS TRUST U/A 1/4/91,
Christine Antkowiak Fischer, Individu-
ally and as Trustee, and John H. Mar-
shall, III, Defendants.

Civ. A. No. S92–0519(R).

United States District Court,
S.D. Mississippi, S.D.

March 24, 1993.

Patrick H. Zachary, Hattiesburg, MS, Mal-
colm F. Jones, Pass Christian, MS, for plain-
tiffs.

H. Rodger Wilder, Scott E. Andress, Ea-
ton & Cottrell, P.A., Gulfport, MS, for defen-
dants.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This matter is before this Court on the
Motion of the plaintiffs, John P. Pitre and
Sydney H. Pitre, for Reconsideration of this
Court's Memorandum Order granting defen-
dants' Motion for Summary Judgment dated
January 21, 1993. Also before this Court is
the Motion of the defendants, The Twelve
Oaks Trust U/A 1/4/91, hereinafter the
"Trust"), Christine Antkowiak Fischer, Indi-
vidually and as Trustee (hereinafter "Fisch-
er"), and John H. Marshall, III, (hereinafter
"Marshall") for Attorney's fees.

### FACTS

The real property and improvements at
issue in the present litigation are located at
715 East Scenic Drive, Pass Christian, Mis-
sissippi (hereinafter the "property"). A resi-
dence approximately 140 years old (hereinaf-
ter the "house") constitutes the improve-
ments on the property. In January 1991, the
property was held in trust, the trustee being
Fischer. The property remained in trust
until the date of its sale to the plaintiffs,
which occurred on August 16, 1991, when the
Trust conveyed the property to the plaintiffs
by warranty deed. A quitclaim deed and
disclaimer was also executed by Marshall on
August 16, 1991, to safeguard against any
future homestead claims he may have as a
resident of the property.

The property was put on the market by the Trust in the latter part of 1991, the sale price being $700,000. In late July of 1991, Mr. Braun, a realtor/broker, notified the Pitres that the property in question was available for purchase. The Pitres then employed a building contractor, J.E. Tabray, Jr. (hereinafter "Tabray"), of Metairie, Louisiana, to do a visual inspection of the house. The plaintiffs, in their Motion for Reconsideration, argue Tabray was not paid for his services and that he was inspecting the property for the purpose of remodeling only. The defendants contend the plaintiffs and the building contractor visited and completely inspected the property. "The plaintiffs' contractor was allowed free access to any and all areas of the property including the improvements thereon." During this inspection "it was noted the roof was in poor condition, that certain portions of the plumbing would have to be reworked and upgraded and that the air conditioning and heating equipment and duct work needed repairs."

The Pitres, based on the facts and acknowledgment of necessary repairs, offered the trust $625,000, as opposed to the $700,000 asking price. The $75,000 reduction was made to cover the costs the plaintiffs would incur in making the necessary repairs and improvements to the house. The offer was accepted and $50,000 in earnest money was deposited by the Pitres. The Trust allegedly "agreed to this reduction on the basis that the counteroffer included any and all contingencies that would affect the purchase price."

To effectuate this agreement, an "as is" contract was entered into on August 2, 1991 (hereinafter "sales contract"), between the plaintiffs and the Trust for the sale and purchase of the property. The applicable contract provision reads as follows:

12. ACCEPTANCE: The buyer represents that he has personally inspected and examined the above mentioned premises and all improvements thereon and accepts the property in its **as is and present condition.** Neither party has relied upon any statement or representation not embodied in this contract made by the other party or the sales representative bringing the parties together. The provisions of this con-

tract shall apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties hereto.

Sales Contract dated August 2, 1991 (emphasis added). Defendants further allege the plaintiffs "also agreed that they had inspected the property and all improvements thereon and have not relied on any statement or representations as to the condition of the property." In making the foregoing statement, plaintiffs relied on the following portion of the sales contract:

BUYERS STATEMENT: ... Buyer acknowledges further that he has not received or relied upon any statements or representations regarding ... the size or condition of the property. ...

Sales Contract dated August 2, 1991.

After the contract was signed and prior to the close of the sale, the plaintiffs' contractor, Tabray, once again returned to the property for a final inspection and again was afforded complete access to the property and the improvements thereon. The plaintiffs contend the sole purpose of Tabray's final inspection was to "prepar[e] plans for remodeling and renovation of the second floor of the residence, which had not previously been remodeled or upgraded by the previous owners or by the trust."

Further, plaintiffs alleged that "no inspection could be done regarding the interior structural walls or support peers or joists due to the unreasonable inaccessibility to this area under the home and due to the fact that this area was blocked with heating equipment and duct work." Furthermore, plaintiffs asserted that in April of 1990 both Fischer and Marshall, acting on behalf of the Trust, had a builder/contractor "by the name of Gary Miller of Miller & Sons Decorating [hereinafter "Miller"], come out and view the foundation and the support walls and structure of the home for the purposes of assessing repairs necessary to correct structural deterioration and to provide them with an appraisal regarding the costs of said repairs." The plaintiffs alleged that the Trust, Fischer, and Marshall remained silent regarding this alleged knowledge of the defective and deteriorated condition of the support walls and foundation of the home, thus con-

cealing from the Pitres material facts regarding a dangerous and defective condition of the residence. Miller's services were never requested by Fischer nor Marshall after the appraisal was allegedly given to the defendants. However, Miller allegedly gained access to the area, which plaintiffs claim to be "unreasonably inaccess[ible]," by way of crawling under the house to inspect. Tabray failed to employ this technique while inspecting the said property. Plaintiffs contend Tabray was too large to access the aforementioned area and the size of Miller is unknown by this Court.

It was not until the plaintiffs began remodeling the upstairs portion of the residence that the alleged latent defects of the support walls and deterioration of the same was discovered. John Bolian (hereinafter "Bolian"), a Bay St. Louis design builder, was hired by the plaintiffs to remodel and renovate portions of the house. Bolian accessed the allegedly deteriorated portion of the house by ripping out the heating equipment and extensive duct work and crawling through the same.

Plaintiffs previously asserted to this Court that as a direct and proximate result of the acts and/or omissions of the defendants "the plaintiffs suffered damages for the cost of repair of the defective condition and/or loss of the benefit of the bargain, fair market value of the loss of the use of the premises during the period of time required to remedy the damages, annoyance, inconvenience, and mental anguish and other actual damages in the sum of $150,000." Plaintiffs further alleged they are entitled to punitive damages as a result of the gross negligence and/or willful and malicious conduct of the defendants in the sum of $100,000. Accordingly, the plaintiffs also ask this Court to award interest at the legal rate and a reasonable attorney's fee and costs of court, and any other general and specific relief that they may be entitled to under the premises.

Plaintiffs' Motion to Reconsider argues there is a genuine issue of material fact before this Court as to Tabray's inspection, thus the granting of summary judgment was inappropriate. This Court has reviewed the facts in the light most favorable to the non-moving party with regards to the "inspection" of the subject property, and this Court's findings are discussed below.

## DISCUSSION

■ This Court asserts diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a). The plaintiffs are adult resident citizens of the State of Louisiana; Fischer and Marshall are adult resident citizens of the State of Texas; and the Trust was organized and exists under the laws of the State of Mississippi with its domicile address also being in the State of Mississippi. The amount in controversy exceeds the requisite amount of $50,000.

For the following discussion of the plaintiffs' Motion to Reconsider, this Court will for the sake of arguendo, assume Tabray was not "employed" by the plaintiffs per se for the purpose of examining structural defects, but was present for the sole purpose of preparing an estimate for remodeling the house. Therefore, this Court adopts the plaintiffs' statements regarding Tabray's inspection to be true.

■ The word "as" means "in the same manner" and "is" refers to "present" and "often has a future meaning." Black's Law Dictionary, 113, 830 (6th Ed.1990). "As is", when utilized in the sale of real property, means the property will be sold in its then existing physical condition. *In re Hawaii Daiichi–Kanko, Inc.,* 24 B.R. 163 (B.C.D.C.Hawaii.1982). Numerous courts have recognized that an "as is" provision in a contract may protect the seller from liability for defects in the property. See *Allied Corp. v. Frola,* 730 F.Supp. 626 (D.C.N.J.1990), summary judgment gr, 1992 WL 281114 (D.C.N.J.1992); *Haygood v. Burl Pounders Realty, Inc.,* 571 So.2d 1086 (Ala.1990); *No–Risk Chemical Co. v. El–Kerdi,* 453 So.2d 482 (Fla.Dist.Ct.App.1984).

When the term "as is" is united with the term "contract", the general principles governing the construction of a contract apply. The Mississippi Supreme Court held in *Koch v. H & S Development Co.,* 249 Miss. 590, 163 So.2d 710 (1964) as follows:

The owner or lessor of property, when he contracts with a buyer or a lessee, should be able to rely upon the simple, mutually accepted terms of the contract, as should the buyer and lessee. The terms of the contract when fulfilled or breached should decide if possible the rights of the parties.... provided it is not illegal or against public policy, persons have and should have the right to contract with reference to their property their interest therein and the use thereof with other persons and rely upon the terms and conditions of the contract mutually agreed upon.

*Koch,* 163 So.2d at 727. The contract at issue was voluntarily signed by all parties.

■ The "as is" clause in the sales contract between the parties to this suit is clear and unambiguous. Therefore, the parole evidence rule would bar admissibility of any evidence regarding the "as is" clause **unless it is to show fraud.** This Court recognizes the general rule that an "as is" provision in a contract for the sale of realty, by which the purchaser agrees to take the property in the condition in which it is, will not serve to preclude a purchaser from bringing an action for recision or for damages if such is based upon the seller's fraudulent representation or concealment concerning the physical condition of the property. *Kaye v. Buehrle,* 8 Ohio App.3d 381, 8 OBR 495, 457 N.E.2d 373 (1983). In the case at hand, plaintiffs alleged that the defendants fraudulently misrepresented the property and fraudulently concealed defects therein, thus this Court will consider the parole evidence in deciding whether there has, in fact, been a commission of fraud. As previously noted by this Court, the plaintiffs failed to prove any existence of any fraudulent representation whatsoever. In fact, the plaintiffs failed to prove a single element of fraud.

■ A showing of fraud would invalidate the contract with regards to recision and/or damages. In order to establish fraud, the plaintiffs must prove the following elements by **clear and convincing evidence:**

(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of his truth, (5) his intent that it should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on the truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Franklin v. Lovitt Equipment Co.,* 420 So.2d 1370, 1373 (Miss.1982); see also *Bank of Shaw v. Posey,* 573 So.2d 1355 (Miss.1990); *Ezell v. Robbins,* 533 So.2d 457 (Miss.1988). If the plaintiffs fail to prove any element of fraud by clear and convincing proof, the entire claim will fail. *Bank of Shaw v. Posey,* 573 So.2d 1355 (Miss.1990). Hence, the plaintiffs' entire claim fails.

One must make an affirmative misrepresentation. Plaintiffs in this case have failed to show a representation made by the defendants for which the plaintiffs could justifiably have relied upon. There is nothing in the record which implies that the defendants made any representations regarding the condition of the house. Further, the buyers' statement in the contract provides:

Buyer acknowledges further that he has not received or relied upon any statements or representations regarding ... the size or condition of the property....

See Sales Contract dated August 2, 1991. Therefore, fraudulent misrepresentation is not an issue in the present litigation.

Plaintiffs also alleged that the defendants induced the plaintiffs to purchase the property "by failing to disclose the foundation and structure supporting the first floor of the residence were in defective condition and/or that the ineffective repairs had been done to remedy the same." Plaintiffs contend the defendants "made the nondisclosure with an intent to deceive and defraud the plaintiffs and with an intent to induce the plaintiffs' reliance on the nondisclosure." Further, plaintiffs claim that they "reasonably relied on the defendants' silence as an indication that the property was not defective as stated hereinbefore, and in justifiable reliance thereon entered into the contract for the purchase of the property, consummated the transaction and suffered injury and damages as a proximate result of the defendants' nondisclosure."

There are exceptions to the general rule barring claims for nondisclosure, one being that a vendor is under a duty to disclose to the vendee any hidden defects which he knows or should have known that which may present an unreasonable risk of harm to persons on the premises, and which he may anticipate that the vendee will not discover." W. Prosser and K.P. Keeton, **The Law of Torts,** 447. The plaintiffs in this case had an equal opportunity and access from which they could have discovered the alleged structural defect.

Courts have held that when a seller chooses to represent some facts to the buyer, he accepts the duty to disclose all facts. *Loewer v. Harris,* 57 F. 368 (2nd Cir.1893); *Guastella v. Wardell,* 198 So.2d 227 (Miss.1967). To establish a duty to disclose, the courts have looked at various factors. Some of these factors are as follows:

1) The difference in the degree of intelligence of the parties to the transaction;

2) Whether or not the vendor has concealed an intrinsic defect which could not be discovered by reasonable care and that such a defect would affect the market value;

3) Whether or not the person acted in some way to prevent discovery of the information.

Again, this Court closely examined the foregoing factors and finds no such duty to exist.

The court in *Davidson v. Rogers,* 431 So.2d 483, 485 (Miss.1983) held that:

In order to recover damages for fraudulent concealment, [purchaser] must demonstrate [vendor] took some action, affirmative in nature, which was **designed or intended to prevent and which did prevent, the discovery of the facts giving rise to the fraud claim.**

(emphasis added). Plaintiffs have failed to prove to this Court any affirmative action, on the part of the defendants, which was designed to prevent the plaintiffs or their representative from discovering alleged defects.

The Mississippi Supreme Court in the case of *Mincy v. Crisler,* 132 Miss. 223, 96 So. 162 (1923), involving the sale of a house, held:

The solution of this question involves a consideration of whether, under the facts and evidence, the Court was authorized to hold the defect which caused the injury and loss was a patent one; that is to say, one which [purchaser] might have discovered by the exercise of ordinary diligence. It is conceded that [purchaser] was aware of the presence of the open ditch on the rear of the premises, and that the [vendor] made no representations whatever in regard to the course of the ditch or to the foundation of the house, and the [vendor] **was under no duty to disclose any fact that an inspection of the premises conducted with reasonable and ordinary diligence would have disclosed.**

*Mincy,* 96 So. at 163 (emphasis added); see also *Anderson v. State,* 132 Miss. 147, 96 So. 163 (1923).

Caveat emptor, in other words, "buyer beware", is the common law rule which is still applied to purchasers of real property. "[I]n the absence of express agreement or misrepresentation, the purchaser is expected to make his own examination and draw his own conclusions as to the condition of the land; and the vendor is, in general, not liable for any harm resulting to him or others from any defects existing at the time of transfer." W. Prosser and K.P. Keeton, **The Law of Torts,** Section 64 at 447 (5th Ed.1984). This Court finds the plaintiffs had a full and fair opportunity to inspect and formulate their own opinion as to the condition of the improvements on said property and, in fact, did so. Clearly, the plaintiffs assumed the risk involved with buying real property with the improvements being 140 years old. The purchasers were on notice that there could be structural defects in the improvements.

A key factor, in the case at hand, is the reduction in the sales price. Such a reduction is a clear indication that both the purchasers and the seller had a meeting of the minds when signing the "as is" contract. Plaintiffs have put an abundance of weight on the appraisal allegedly given to the defendants by Miller. Curiously, the total figure of Miller's appraisal equals $10,310. This figure leaves $64,690 of the $75,000 price reduction available for the initial repairs

found to be necessary. This Court fails to see the plaintiffs' connection between the defendants' knowledge of defects totaling $10,310, and the plaintiffs' alleged actual damages totaling $150,000. This Court must remind the plaintiffs that the defendants, as vendors, are not responsible for the personalized improvements the plaintiffs wish to make to the house.

Again, there are limitations placed on the seller's duty to a buyer in order to maintain the transferable nature of the real estate market. Public policy favors the conveyance of property. If this Court were to require the present owner to repair an improvement to the buyer's specifications, this Court would be impeding the transferable nature of the real estate market.

In conclusion, there is little discrepancy between the intelligence of the contracting parties; the plaintiffs were free to inspect the premises; the defendants never in any way interfered with the plaintiffs' inspection; the defendants clearly have not spoken any representations; therefore, they have not assumed a duty to disclose; and foremost, plaintiffs have failed to prove any element of fraud by clear and convincing evidence. Further, the plaintiffs failed to show this Court any incidence of gross negligence or willful misconduct on the part of the defendants. There is clearly no genuine issue of material fact which this Court, in liberally construing the facts in favor of the plaintiffs, could find which would preclude this Court from granting summary judgment.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion of the plaintiffs, John P. Pitre and Sydney H. Pitre, for Reconsideration of this Court's Memorandum Order granting defendant's Motion for Summary Judgment dated January 21, 1993 is hereby **DENIED,** and the the Motion of the defendants, The Twelve Oaks Trust U/A 1/4/91, Christine Antkowiak Fischer, Individually and as Trustee, and John H. Marshall, III, for Attorney's fees is hereby **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that in affirming the granting of the defendants' Motion for Summary Judg-

ment, the defendants are hereby awarded costs exclusive of attorney's fees.

**SO ORDERED AND ADJUDGED.**